The petitioner, William Thomas Knotts, filed this petition for a writ of mandamus directing the Honorable Charles Price, circuit judge for the Fifteenth Judicial Circuit, to recuse himself from hearing Knotts's Rule 32, Ala.R.Crim.P., petition for post-conviction relief. Knotts was convicted of two counts of capital murder and was sentenced to death. He was also convicted of escape, three counts of theft of property, and two counts of burglary. His convictions were affirmed, but the case was remanded for resentencing on several of the theft of property and burglary convictions. Knotts v. State,686 So.2d 431, aff'd. on return to remand, 686 So.2d 484, aff'd,686 So.2d 486 (Ala.Cr.App. 1995), cert. denied, Knotts v. Alabama, ___ U.S. ___, 117 S.Ct. 1559, 137 L.Ed.2d 706 (1997). In October 1997, Knotts filed a Rule 32 petition attacking his conviction and his sentence to death. He also filed a motion asking Judge Price to recuse himself from hearing the petition. Judge Price denied the motion, and this petition for a writ of mandamus followed. We stayed the action in the circuit court pending the outcome of this petition.
A writ of mandamus is the appropriate vehicle by which to review a trial court's ruling on a motion for recusal. Ex parteCrawford, 686 So.2d 196 (Ala. 1996); Crumpton v. State,677 So.2d 814 (Ala.Cr.App. 1995).
The standard applied to a ruling on a motion for recusal was discussed by the Alabama Supreme Court in Ex parte Bryant,682 So.2d 39 (Ala. 1996). The Supreme Court stated:
 "The standard for recusal is an objective one: whether a reasonable person knowing everything that the judge knows would have a 'reasonable basis for questioning the judge's impartiality.' [Ex parte] Cotton, 638 So.2d [870] at 872 [(Ala. 1994)]. The focus of our inquiry, therefore, is not whether a particular judge is or is not biased toward the petitioner; the focus is instead on whether a reasonable person would perceive potential bias or a lack of impartiality on the part of the judge in *Page 264 
question. In In re Sheffield, 465 So.2d 350, 357
(Ala. 1984), this Court wrote:
 " '[T]he reasonable person/appearance of impropriety test, as now articulated in Canon 3(C)(1), in the words of the Supreme Court of the United States may "sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties." In re Murchison, 349 U.S. 133, [134], 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). As stated in Canon 1 of the Code of Judicial Ethics, "An independent and honorable judiciary is indispensable to justice in our society," and this requires avoiding all appearance of impropriety, even to the point of resolving all reasonable doubt in favor of recusal.' "
682 So.2d at 41. (Some emphasis in original; some emphasis added in Bryant.)
 "The burden is on the party seeking recusal to present evidence establishing the existence of bias or prejudice. Otwell v. Bryant, 497 So.2d 111, 119 (Ala. 1986). Prejudice on the part of a judge is not presumed. Hartman v. Board of Trustees, 436 So.2d 837 (Ala. 1983); Duncan V. Sherrill, 341 So.2d 946 (Ala. 1977); Ex parte Rives, 511 So.2d 514, 517 (Ala.Civ.App. 1986). "[T]he law will not suppose a possibility of bias or favor in a judge who is already sworn to administer impartial justice and whose authority greatly depends upon that presumption and idea." ' Ex parte Balogun, 516 So.2d 606, 609 (Ala. 1987), quoting Fulton v. Longshore, 156 Ala. 611, 46 So. 989 (1908). Any disqualifying prejudice or bias as to a party must be of a personal nature and must stem from an extrajudicial source. Hartman v. Board of Trustees of the University of Alabama, 436 So.2d 837
(Ala. 1983); Reach v. Reach, 378 So.2d 1115
(Ala.Civ.App. 1979). Thus,
 " ' "[T]he disqualifying prejudice of a judge does not necessarily comprehend every bias, partiality, or prejudice which he may entertain with reference to the case, but must be of a character, calculated to impair seriously his impartiality and sway his judgment, and must be strong enough to overthrow the presumption of his integrity." '
 "Ross v. Luton, 456 So.2d [249] at 254 [(Ala. 1984)], quoting Duncan v. Sherrill, 341 So.2d 946, 947 (Ala. 1977), quoting 48 C.J.S. Judges § 82(b)."
Ex parte Melof, 553 So.2d 554, 557 (Ala. 1989). See also Exparte Cotton, 638 So.2d 870 (Ala. 1994).
Knotts alleged in his motion that Judge Price should withdraw from the case because, he says, Judge Price commented to Knotts's Alabama lawyer that he opposed the pro hac vice
admission of out-of-state attorneys; because, he says, Judge Price ignored the mitigating evidence when he fixed Knotts's sentence at death; because, he says, Judge Price's conduct showed that he had a negative opinion about Knotts; and because, he says, Judge Price engaged in ex parte
communications with the prosecution. Judge Price, when denying the motion to recuse, stated that he "flatly and emphatically denie[d] the allegations asserted by counsel for post-conviction remedies in this case."
In this mandamus petitions, Knotts advances the same arguments he made in his recusal motion. Judge Price stated in his affidavit in answer to this petition:
 "I presided over the 1992 capital murder trial of William Thomas Knotts and sentenced him to death for the murder of Mrs. Helen Rhodes. The case was affirmed both by this Court and the Alabama Supreme Court and the United States Supreme Court denied certiorari review.
 "I have read Mr. Stephen Glassroth's affidavit filed in support of Knotts's petition for writ of mandamus wherein he alleges that, during a conversation on August 28, 1997, I told Mr. Glassroth I was not going to allow 'these New York lawyers' to appear on behalf of Mr. Knotts since Mr. Knotts was not entitled to counsel on a Rule 32 petition. I am also aware that Mr. Glassroth has alleged that during a conversation on August 29, 1997, I told him that this case was the country's first judicial override for a 'white-on-black' killing and that I was not going to allow the New York lawyers to upset this conviction. Without equivocation I specifically and categorically *Page 265 
deny making those or any similar statements.
 "I did talk to Mr. Glassroth in the hall or courtroom on one or two occasions when he inquired about the pro hac vice admission of some out-of-state attorneys to represent Mr. Knotts. I told Mr. Glassroth that I would sign the pro hac vice petitions if there was something pending for which Mr. Knotts needed representation but, at that time, he did not have anything pending. Later Mr. Knotts filed a pro se Rule 32 petition on October 1, 1997, and I subsequently signed the pro hac vice
petitions.
 "At no time, either in this particular case or in any other case in my twenty-year career as a judge, have I sentenced a defendant based on race or considered race as a factor in sentencing a criminal defendant. I did not mention or consider the race of Mr. Knotts or the victim in determining Mr. Knotts's sentence or my decision on the pro hac vice petitions.
 "In sum, I categorically and specifically deny the allegations made by Mr. Glassroth pertaining to my . . . refusal to sign the pro hac vice
petitions. Thus, there is no basis necessitating my recusal from this case."
Knotts first argues that Judge Price's almost immediate ruling on the motion, eight days after its submission, created an appearance of impropriety. We do not agree. We applaud Judge Price for his prompt ruling and his attention to judicial responsibilities and the Canons of Judicial Ethics. Canon 3 A(5), Alabama Canons of Judicial Ethics, states, "A judge should dispose promptly of the business of the court, being ever mindful of matters taken under submission."
Knotts also argues that it was error to deny the motion without a hearing and without a response from the state. We do not agree. Certainly, Judge Price had firsthand knowledge of the allegations made in the motion, and he was free to reject them without further action. Forcing a judge to hold a hearing on every motion that is filed would unduly burden trial judges.
Knotts also contends that once Judge Price commented on the allegations in the motion there was an independent basis for him to withdraw. Knotts cites Florida law in support of this contention. See Rogers v. State, 630 So.2d 513 (Fla. 1993);Kreager v. State, 566 So.2d 934 (Fla. 4th DCA 1990); Bundy v.Rudd, 366 So.2d 440 (Fla. 1978).[1] However, Knotts fails to mention a Florida Rule of Criminal Procedure specifically provided that a judge, "shall not pass on the truth of the facts alleged nor adjudicate the question of disqualification." Rule 3.23(d), Fla.R.Crim.P.[2] The Florida Supreme Court also noted that the reason behind this rule was to prevent "the creation of an intolerable adversary atmosphere between the trial judge and the litigant." Bundy, 366 So.2d at 442.
Neither the Alabama Rules of Criminal Procedure nor the Alabama Rules of Judicial Administration contain a similar provision. We believe that the better practice is for the trial judge to address the allegations of bias made in a motion to recuse. If nothing in the record addresses the merits of the allegations, an appellate court is put in the awkward position of reviewing a silent record. Thus, an allegation that recusal is required would be barred from review on appeal because a reviewing court may not predicate error on a silent record.O'Shields v. State, 689 So.2d 227 (Ala.Cr.App. 1996). (A reviewing court's failure to predicate error on a silent record applies to death penalty cases. Arthur v. State, 711 So.2d 1031
(Ala.Cr.App. 1996)). We fail to see how Judge Price's comment resulted in an "intolerable adversarial atmosphere."
Knotts further argues that Judge Price should recuse himself because, he argues, *Page 266 
by denying the allegations contained in the motion, Judge Price has become a material witness. We do not agree. Knotts, by alleging that Judge Price is biased against him, has placed Judge Price in the position of having to respond to those allegations. A Court should not reward a defendant who alleges that a judge is biased and then asks for recusal because that judge responds to the allegations.
Knotts further contends that several comments Judge Price made during the trial proceedings evidenced a strong personal bias against him. Specifically, he contends as follows:
 "Judge Price told Mr. Glassroth that he did not plan to admit the out-of-state counsel pro hac vice
for the purpose of representing Mr. Knotts. Judge Price stated that he had imposed the death penalty on Mr. Knotts for the killing of a black citizen, and that his override of the jury's recommendation for life imprisonment was the first such override for a 'white-on-black' killing in the United States. He told Mr. Glassroth that he did not intend to admit out-of-state counsel pro hac vice
so that they could upset the conviction."
Knotts's brief in support of mandamus, p. 19. (Mr. Glassroth has filed an affidavit in support of the above allegations.)
Each of the allegations quoted above is directly refuted by Judge Price in his affidavit in answer to the mandamus petition. "All judges are presumed to be impartial and unbiased. Ex parte Cotton, 638 So.2d 870 (Ala. 1994). 'The burden is on the party seeking recusal to present evidence establishing the existence of bias or prejudice.' " Ex parteGrayson, 665 So.2d 986, 987 (Ala.Cr.App. 1995). Knotts has failed to meet this burden. Moreover, Judge Price approved the admission pro hac vice of lawyers in this case from New York.
Knotts further contends that Judge Price's sentencing order shows that he ignored the mitigating circumstances when he fixed Knotts's sentence at death. This allegation was addressed on direct appeal and was decided adversely to Knotts.
 "After reviewing the trial court's sentencing order and considering it in its entirety, we conclude, contrary to the assertions of the appellant, that the trial court considered the mitigating circumstances and properly weighed the aggravating and mitigating circumstances in arriving at its decision to sentence the appellant to death. It is clear that the trial court understood the sentencing statutes and properly applied them."
Knotts, 686 So.2d at 450.
Knotts further contends that the fact that Judge Price had received communications from the victim's family is a ground for recusal. Specifically, he contends that Judge Price's sentencing order referred to several unsolicited letters he had received from the victim's family. He contends that these letters constitute ex parte communications with the prosecution and that he was prejudiced by these communications because he was not given an opportunity to respond.
In its response to Knotts's petition, the State says that the prosecution sent defense counsel a copy of the letters on September 16, 1992. The sentencing hearing was held on October 2, 1992. This issue was also addressed on direct appeal and determined to be without merit.
 "The appellant contends that the trial court erred in considering the victim impact evidence in overriding the jury's recommendation when the appellant had no opportunity to rebut or respond to it. We find no merit in this contention. This evidence consisted of several statements from members of the victim's family describing the physical and psychological effects the victim's death had on members of her family; these statements were introduced at the sentencing phase before the trial court as a part of the presentence report. For several days before their introduction, the appellant was aware of the statements and of the fact that they were being used to prepare the presentence report. He had ample time to raise objections to the statements or to offer evidence in rebuttal."
Knotts, 686 So.2d at 450. Moreover, Judge Price's sentencing order specifically states that he did not consider those portions of the letters that he was prohibited from considering *Page 267 
under Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597,115 L.Ed.2d 720 (1991).
Knotts further contends that comments made by Judge Price during the penalty phase showed that Judge Price had formed an opinion about Knotts's punishment before all of the evidence was presented. Judge Price stated: "What you have attempted to present is a very calm young man who is troubled by a family situation. What you have actually presented is [a] fellow who is very compulsive, very hyper, inclined towards disruptive behavior and criminal activity."
This Court, reviewing this case on direct appeal, stated: "The record does not support the charges that the trial court was biased, that it displayed hostility toward the appellant, or that it was partial." Knotts, 686 So.2d at 452. Moreover, comments made by a trial judge that "were fair assessments of the evidence, rather than indications of bias" are not grounds for recusal.
 "The bias or prejudice necessary to disqualify a judge ' "must stem from an extrajudicial source and must result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." ' Kitchens v. Maye, 623 So.2d 1082, 1086 (Ala. 1993) (quoting United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778, 793 (1966)) (emphasis added in Kitchens). A trial court's denial of a motion to recuse will not be reversed on appeal 'unless clear evidence of bias is shown.' Adkins v. State, 600 So.2d [1054] at 1062 [(Ala.Cr.App. 1990), remanded on other grounds, 600 So.2d 1067
(Ala. 1992)]."
Riddle v. State, 669 So.2d 1014, 1019 (Ala.Cr.App. 1994).
The evidence at trial showed that the appellant, an inmate at the Mount Meigs Youth Facility in Montgomery, escaped in October 1989 with another inmate. Knotts told police that while he was in a field by Helen Rhodes's house, which was near the youth facility, Ms. Rhodes called him offensive names and later splashed him with water when she drove past them in her automobile. Knotts eventually surrendered to youth detention employees. However, two weeks later he escaped again. During this later escape, Knotts broke into several homes and stole four guns. He eventually broke into Helen Rhodes's house. Knotts told police that he wanted to get back at Rhodes for splashing him. He waited inside her home approximately one and a half hours until she returned home with her two-year-old son. When Rhodes walked past his hiding place, Knotts shot her. The bullet passed through her arm; she apparently tried to go to her son but fell to the ground. Knotts then shot her in the back. He drove off in her automobile and was discovered in Birmingham the next morning asleep in Rhodes's parked automobile. When Rhodes's husband returned to his home that night, he discovered his wife's body and his son, covered in blood, sitting next to the body and crying.
Certainly, Judge Price's comments were "fair assessments" of the evidence presented at trial. It was not necessary for Judge Price to recuse on this ground.
Last, Knotts argues that the cumulative effect of all of the above instances amounted to an appearance of impartiality and warrants Judge Price's recusal. We do not agree. " 'Canon 3(C)(1) does not require disqualification upon mere allegations of bias that are not supported by substantial fact; and the party seeking recusal must come forward with evidence establishing the existence of bias or prejudice.' " Ex parteGrayson, 665 So.2d 986, 987 (Ala.Cr.App. 1995), quotingBlankenship v. City of Hoover, 590 So.2d 245, 251 (Ala. 1991).
As Justice Scalia, writing for the United States Supreme Court in Liteky v. United States, 510 U.S. 540, 114 S.Ct. 1147,127 L.Ed.2d 474 (1994), stated:
 "The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in *Page 268 
a bench trial) necessary to completion of the judge's task. As Judge Jerome Frank pithily put it: 'Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions.' In re J.P. Linahan, Inc., 138 F.2d 650, 654 (C.A.2 1943). Also not subject to deprecatory characterization as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant."
510 U.S. at 550-51, 114 S.Ct. 1147.
To prevail on a petition for a writ of mandamus, the petitioner must show: (1) a clear legal right to the relief sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the reviewing court. Ex parte Edgar, 543 So.2d 682, 684 (Ala. 1989). There was no evidence that Judge Price was biased against Knotts. Thus, Knotts has failed to clear the initial hurdle in that he has failed to show that he has a clear legal right to mandamus relief.
For the reasons stated above, this petition for a writ of mandamus is due to be, and is hereby, denied. The stay is dissolved.
PETITION DENIED; STAY DISSOLVED.
McMILLAN, COBB, BROWN, and BASCHAB, JJ., concur.
[1] "When a judge has looked beyond the mere legal sufficiency of a suggestion of prejudice and attempted to refute the charges of partiality, he has exceeded the proper scope of his inquiry and on that basis alone established grounds for his disqualification." Bundy v. Rudd, 366 So.2d 440, 442
(Fla. 1978).
[2] This rule was repealed in 1993; this subject is now covered by Rule 2.160, Florida Rules of Judicial Administration. *Page 684