This appeal is taken from a summary judgment granted to the defendants. The plaintiff (Hartman) alleged in his complaint that the individual defendants, Albert S. Miles, Warner O. Moore, and Tony Strong, had made fraudulent representations to him on which he had relied to his detriment, and had taken arbitrary and capricious actions, or, alternatively, had acted in bad faith or under a mistaken interpretation of law, *Page 839 
resulting in punishing Hartman twice for the same offenses. Hartman sought a writ of mandamus, a permanent injunction, and damages from the individual defendants.
Hartman raises two issues for our consideration:
 1. Did the trial court err in granting the defendants' motion for summary judgment where the plaintiff's complaint alleged that the individual defendants had acted in bad faith, arbitrarily and capriciously, fraudulently, or under a mistake of law in punishing the plaintiff twice for the same offense?
 2. Did the trial court err in failing to grant the plaintiff's motion for recusal?
We answer these questions in the negative, and affirm.
The facts of the case are as follows:
Hartman was a student at the University of Alabama in Tuscaloosa, pursuing a degree in music education. At the end of the fall semester, 1979, Hartman received a grade of C in a music theory course in which he thought he should have received an A. In mid-January, 1980, after receiving notice of his grades, Hartman became very irate, argued with his professor, threatened him with violence and used abusive language toward him. In addition, he made harassing telephone calls to the head of the music department and several other University officials over a period of three or four days. On January 15 there was communication between the office of the University counsel and Hartman's attorney, followed by a letter from that office stating that "it is the view of the music department, at least, that Hartman should not be readmitted as a student to this institution during the current semester." There followed several telephone calls and letters, culminating in an agreement that Hartman would "sit out" the spring semester. When Hartman came onto the campus in March, 1980, with his attorney, and registered for the summer term, formal charges were filed against him, stating that he had breached his agreement. It was their contention that it had been understood between the parties, although not reduced to writing, that Hartman was not to enroll prior to the fall term. However, the formal charges were set aside, and in June the parties, with advice of counsel, entered into a new agreement. By this agreement Hartman could enroll for the fall term, but could not take any courses within the department of music. Additionally, Hartman was to receive psychological counselling and have reports sent from the counselling clinic to the University's Office of Student Affairs. Reports indicated that Hartman attended only five of nine scheduled appointments with the psychologist. There is also evidence that he attempted to register for music courses during the summer. In September, Hartman's attorney began inquiring as to the requirements for getting Hartman back into the music program. On November 7, 1980, Hartman requested a full due process hearing on the charges that had been brought against him. At the hearing, at which Hartman was represented by counsel, Hartman admitted the truth of the charges, and was given a voluntary withdrawal (suspension) until the fall of 1981.
This suit was filed in March, 1981. Hartman's petition for writ of mandamus contained in the suit was denied, as was his motion for temporary injunctive relief. There were numerous delays in the case. At one point the trial judge contacted Hartman's attorney by phone and told him that the University of Alabama was "our friends" and "we just shouldn't file suits like this against the University of Alabama." He further threatened to grant the defendants' motion to dismiss without further consideration. (After a hearing on the motion to dismiss, the motion was denied.) The judge later expressed anger over the plaintiff's filing in this court of a petition for writ of mandamus to the trial judge, seeking injunctive relief. This Court denied the writ of mandamus without opinion.Ex parte Hartman, 406 So.2d 404 (Ala. 1981). At the final hearing, in open court, the trial judge stated: "I realize our past in this case and I will have to accept responsibility that our path has been a little rocky." Later, during the same hearing, he said: *Page 840 
 I want to again study this case carefully and I hope that whatever ruling I should make would be acceptable. I will apologize for anything that occurred prior to this time. That is not my duty to get up here and get mad at anybody. I may have gotten a little upset by the effort being made to get me out of the case but that is over with now but in any event I have simply done the best I know how and I intend to do that as I again study the situation we have here in this case.
We examine first the question whether the court erred in granting the defendants' motion for summary judgment. The defendants rely on Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970), and Bowling v. Scott, combined with Bowling v. Mathews,587 F.2d 229 (5th Cir. 1979). Ferguson is a teacher termination case in which the appellate court outlined judicial review of administrative hearings in public institutions of higher learning. In that the case, the appellate court stated:
 The rudiments of due process fair play in school administrative proceedings have been well outlined in this circuit with regard to the rights of college students who were subjected to disciplinary suspensions. They are entitled to a statement of the charges against them, the names of witnesses, the nature of the testimony of those witnesses and the opportunity of presenting a defense. Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1961).
430 F.2d at 856. Regarding judicial review, that court said:
 If no federal right has been violated in the procedures followed, then the court should next look to the record as developed before the academic agency to determine whether there was substantial evidence before the agency to support the action taken, with due care taken to judge the constitutionality of the school's action on the basis of the facts that were before the agency, and on the logic applied by it. Johnson v. Branch [364 F.2d 177 (4th Cir. 1966)], supra. If the procedures followed were correct and substantial evidence appears to support the Board's action, that ordinarily ends the matter.
430 F.2d at 858.
In the Bowling cases, supra, also dealing with teacher termination, the appellate court affirmed a summary judgment in favor of the defendants, finding that procedural due process had been afforded and that an independent review of the hearing showed that the conclusion was supported by substantial evidence.
Hartman maintains that the cases cited above are inapplicable to the one before us because the hearing itself is not contested, either procedurally or substantively. Rather, he claims that the course of events, culminating in a hearing held some ten months after his initially complained of behavior, shows evidence that the named individual defendants acted fraudulently, in bad faith, arbitrarily and capriciously, or under a mistake of law.
Summary judgment may be granted only when the materials on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A.R.Civ.P., Rule 56 (c); Ryan v. CharlesTownsend Ford, Inc., 409 So.2d 784 (Ala. 1981). In determining the existence of genuine issues of material fact, the record must be viewed by this court in a light most favorable to the non-moving party. Ryan, supra; Papastefan v. B L ConstructionCompany, Inc., 356 So.2d 158 (Ala. 1978). In reviewing the record before us, we find definite issues of fact with regard to what the parties actually agreed to do in the spring and summer of 1980, as well as to which parties actually breached the agreements. However, we find no evidence in the record to indicate that any of the three individual defendants acted fraudulently, in bad faith, arbitrarily and capriciously, or under a mistake of law. To the contrary, the evidence, when viewed in a light most favorable to Hartman, indicates that after Hartman committed infractions of a very serious nature, the officials of the University, acting under advice of the University *Page 841 
counsel and through counsel for Hartman, tried to handle the matter in an informal manner which would protect the University and at the same time provide Hartman with an opportunity to pursue his education. When the first agreement was deemed breached, the University initiated disciplinary proceedings. These proceedings were subsequently set aside, and a new agreement voluntarily entered into by the parties, with the understanding that if Hartman breached the new agreement, the disciplinary action would be reinstated. There is ample evidence of actions by which the officials could in good faith have concluded that Hartman had breached this agreement. However, the disciplinary action was not reinstated until Hartman requested a full due process hearing on the matter. Hartman had received prior notice that such a hearing could result in additional sanctions. While the length of time between Hartman's initial acts and the hearing was unfortunate, and one might conclude, in retrospect, that Hartman would have been better off with an immediate formal hearing rather than the attempted informal agreements, we cannot find from the facts any evidence that the defendants acted in bad faith or as otherwise charged in the allegations.
Finding that there are no issues of material fact as to the allegations in the complaint, we return to the requirements of due process set forth in Ferguson v. Thomas, supra. The procedures followed in the disciplinary hearing are not challenged by Hartman, and there was substantial evidence before the disciplinary committee to support the action taken by it. Therefore, we hold that the summary judgment in favor of the defendants is due to be affirmed.
Hartman next contends that the trial judge erred in refusing to recuse himself.
Canon 3 C(1), Alabama Canons of Judicial Ethics, states in pertinent part:
C. DISQUALIFICATION:
 (1) A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned, including but not limited to instances where:
 (a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
Hartman insists that the trial judge's impartiality might reasonably be questioned as a result of his remarks suggesting a personal bias in favor of the University of Alabama, as well as his expressions of anger toward Hartman's attorney.
In United States v. Grinnell Corp., 384 U.S. 563,86 S.Ct. 1698, 16 L.Ed.2d 778 (1966), the United States Supreme Court stated:
 The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. Berger v. United States, 255 U.S. 22, 31
[41 S.Ct. 230, 65 L.Ed. 481]. Any adverse attitudes that [the trial judge] evinced toward the defendants were based on his study of the depositions and briefs which the parties had requested him to make.
Grinnell, 384 U.S. at 583, 86 S.Ct. at 1710.
Bias and prejudice must be shown by the conduct of the trial judge and may not be presumed or inferred by his subjective views. Duplan Corporation v. Deering Milliken, Inc.,400 F. Supp. 497 (D.S.C. 1975). Adverse rulings during the course of the proceedings are not by themselves sufficient to establish bias and prejudice. Knapp v. Kinsey, 232 F.2d 458 (6th Cir. 1956).
While the trial judge's remarks to Hartman's attorney were of an unfortunate and intemperate nature, the record indicates that he recognized that fact, and apologized in open court. There is nothing in the record to indicate that the alleged bias resulted "in an opinion on the merits on some basis other than what the trial judge learned from his participation in the case." United States v. Grinnell Corp., supra. Following a complete review of the same material *Page 842 
which was before the trial judge when he rendered his judgment, this court has arrived at a conclusion affirming that judgment. In the light of these facts, it is clear that Hartman was not prejudiced by the trial judge's failure to recuse himself.
For the foregoing reasons, the trial court's judgment is due to be, and hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.