The petitioner, Joe Cecil Duncan, Jr., seeks a writ of mandamus to compel the recusal of a circuit court judge on the ground that he is biased and prejudiced. *Page 1333 
Duncan was convicted of the capital murder of Elizabeth Cobb in Dallas County; the jury returned a verdict of life without parole.[1] The trial court overrode the jury's verdict and sentenced Duncan to death. The Court of Criminal Appeals reversed and remanded for a hearing on the question whether the principles of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), had been violated in the selection of the jury. Duncan v. State, 575 So.2d 1198 (Ala.Crim.App. 1990). On remand, the trial court held that there had been no Batson
violation. On return to remand, the Court of Criminal Appeals reversed and remanded for a new trial. Duncan v. State,612 So.2d 1304 (Ala.Crim.App. 1992). Duncan then moved the trial judge to recuse; the judge refused to do so. Subsequently, Duncan petitioned the Court of Criminal Appeals for a writ of mandamus ordering the trial judge to recuse, but that court denied the petition, on September 8, 1993, without an opinion. ___ So.2d ___. Duncan now seeks a writ of mandamus from this Court ordering the trial judge to recuse because of what Duncan says are "the unique facts of this case and the clear evidence of personal bias on the part of [the trial] judge." Duncan's counsel says that "if the trial court's decision is not reversed, the very question whether he should live or die will have been decided by a trial court which has evidenced personal bias and prejudice against him."
Duncan maintains that the trial judge displayed personal bias, prejudice, and hostility by finding, among other things, that the aggravating circumstance that the capital offense was especially atrocious, heinous, or cruel was applicable even though the state did not seek to use that factor and even though, he says, the trial judge knew that that finding could not be sustained. The judge stated:
 "THE COURT: Now I'm tempted to go one step further and say there's an additional statutory aggravating circumstance that has been proven in this case and that's the last one that's set forth in the Code, and I'll state — I'll read from the Code at this time, the capital offense was especially heinous, atrocious or cruel compared to other capital offenses; but . . . I understand that that probably would not be sustained in this case although in my personal opinion it should be. . . . But, you know, I just ask myself one simple question; if we got news that they were slaughtering cattle this way in the stockyard, what would the reaction be? Would we say that that's heinous, atrocious and cruel? I would."
Duncan also maintains that the trial judge demonstrated blatant personal bias toward Duncan by determining, on his own, that the crime for which Duncan was convicted was premeditated, a factor not listed in the statute and not to be considered as an aggravating circumstance. At the sentencing hearing, the judge stated:
 "Now the murder in this case was premeditated, it was diabolical, methodical, heartless, cruel, cold, deliberate, it was planned. It was a planned execution and slaughter of an innocent young lady while she quietly and peacefully waited unsuspectingly on the sacred grounds of a little country church on the Sabbath evening. . . . There was no excuse, there was no justification, for a vile, conscienceless, pitiless murder."
According to Duncan, these statements evidence such bias and prejudice as to mandate the trial judge's recusal in this case — these statements, Duncan says, evidence that the trial judge's impartiality is reasonably in question.
This Court recognizes the importance of judicial impartiality:
 " 'Implanted in the foundation of public policy is the general rule that no judge shall preside in a case in which he is not wholly free, disinterested, and independent.' Ex parte White, 53 Ala. App. 377, 386, 300 So.2d 420, 429, cert. denied, 293 Ala. 778, 300 So.2d 439 (1974). Or, as Justice Frankfurter once said, '[J]ustice must satisfy the appearance of justice.' Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954)." *Page 1334 
Ex parte Large, 501 So.2d 1208, 1210 (Ala. 1986).
Under Canon 3(C)(1), Alabama Canons of Judicial Ethics, recusal is required when "facts are shown which make it reasonable for members of the public or a party, or counsel opposed to question the impartiality of the judge."Acromag-Viking v. Blalock, 420 So.2d 60, 61 (Ala. 1982). Specifically, the Canon 3(C) test is: "Would a person of ordinary prudence in the judge's position knowing all of the facts known to the judge find that there is a reasonable basis for questioning the judge's impartiality?" Matter of Sheffield,465 So.2d 350, 356 (Ala. 1984). The question is not whether the judge was impartial in fact, but whether another person, knowing all of the circumstances, might reasonably question the judge's impartiality — whether there is an appearance of impropriety. Id.; see Ex parte Balogun, 516 So.2d 606 (Ala. 1987); see, also, Hall v. Small Business Administration,695 F.2d 175 (5th Cir. 1983).
Nevertheless, we note that mandamus, which is the appropriate vehicle for challenging the failure of a trial judge to disqualify himself, see Ex parte Large, supra, is an extraordinary remedy that will not lie unless the petitioner can show a clear legal right to relief. Ex parte Army AviationCenter Federal Credit Union, 477 So.2d 379 (Ala. 1985). Therefore, for Duncan to demonstrate a clear right to the relief sought by the mandamus petition, he must show the appearance of impropriety by showing that the alleged bias, hostility, or prejudice is "personal" rather than "judicial":
 " 'The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.' "
Ex parte Large, supra, at 1210, quoting United States v.Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710,16 L.Ed.2d 778 (1966) (quoted in Hartman v. Board of Trustees ofthe University of Alabama, 436 So.2d 837 (Ala. 1983)).
In this case, we cannot say, as a matter of law, that the trial judge's statements in and of themselves show bias, hostility, or prejudice toward Duncan; therefore, we cannot say that Duncan has demonstrated a clear legal right to have the trial judge remove himself. The trial judge's statements arose out of a judicial proceeding, not from an extrajudicial source; and although the trial judge's expressed opinions may have been better left unsaid, in our opinion the remarks he made do not show bias, hostility, or prejudice against Duncan arising from a "personal," i.e., extrajudicial, source.
Based on the foregoing, this Court does not find that Duncan made a clear showing that recusal is required.
WRIT DENIED.
MADDOX, SHORES, STEAGALL, KENNEDY, INGRAM and COOK, JJ., concur.
[1] Duncan was tried and convicted of killing Cobb for $350,000 in insurance proceeds.