863 So.2d 1136 (2001)
Ex parte Vaughn Steel FOWLER.
(In re State of Alabama v. Vaughn Steel Fowler).
CR-00-2513.
Court of Criminal Appeals of Alabama.
November 2, 2001.
Rehearing Denied February 1, 2002.
*1137 Cindy W. Powell, Mobile, for petitioner.
William H. Pryor, Jr., atty. gen., and Melissa K. Atwood, asst. atty. gen., for respondent.
PER CURIAM.
The appellant, Vaughn Steel Fowler, filed this petition for a writ of mandamus directing Judge Robert Earl Wilters to grant his motion to recuse himself from *1138 hearing Fowler's de novo appeal in the circuit court. Fowler was convicted in the district court for public intoxication, resisting arrest, menacing, and assault. He was sentenced to concurrent terms of 60 days in jail for each offense and was fined $100 and assessed court costs in each case. Fowler gave notice that he was appealing de novo to the Circuit Court for Baldwin County. At a pretrial conference Judge Wilters informed Fowler that if convicted in the circuit court he would receive a greater sentence than the sentence he had received in district court. Based on that statement, Fowler moved that Judge Wilters recuse himself. Judge Wilters denied the motion; this petition followed. This petition was filed on August 31, 2001; Fowler's trial was set for September 5, 2001. We stayed all action in the circuit court pending the outcome of this petition.
"A writ of mandamus is the appropriate vehicle by which to review a trial court's ruling on a motion for recusal." Ex parte Knotts, 716 So.2d 262, 263 (Ala. Crim.App.1998).
Fowler argues that Judge Wilters improperly denied his motion to recuse because, he says, there was "an appearance of impropriety" based on Judge Wilters's statement. The State responded, arguing that "Fowler has not demonstrated that a reasonable person would conclude that Judge Wilters is personally biased against Fowler[;] he has failed to establish that Judge Wilters has a legal obligation to recuse himself from presiding over Fowler's appeal." (State's answer, p. 6-7; emphasis added.) The State does not dispute that Judge Wilters made this statement. In fact, the State has attached a copy of an affidavit executed by Judge Wilters. The affidavit states that Judge Wilters told Fowler that he would receive a greater sentence if he was convicted in the circuit court and that so informing a defendant was his policy.
Canon 3.C.(1), Alabama Canons of Judicial Ethics, governs when a judge is required to recuse himself or herself from hearing a case. The Canon states, in part:
"(1) A judge should disqualify himself in a proceeding in which his disqualification is required by law[1]or his impartiality might reasonably be questioned, including but not limited to instances where:
"(a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
"(b) He served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer in the matter, or the judge or such lawyer has been a material witness concerning it."
(Emphasis added.) The Canons of Judicial Ethics have the force and effect of law. Balogun v. Balogun, 516 So.2d 606 (Ala. 1987). Subsections (a) through (d) in Canon 3.C.(1) of the Canons of Judicial Ethics are examples of situations where a trial court's impartiality might reasonably be questioned. The list does not purport to be inclusive. As subdivision (1) states, "including but not limited to instances where...."
*1139 The United States Code includes a statute similar to Canon 3.C.(1), which defines when a judge must recuse from a case. See 28 U.S.C. § 455. This section reads, in part, as follows:
"(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
"(b) He shall also disqualify himself in the following circumstances:
"(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
"(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it...."
Interpreting this statute, the United States Supreme Court stated the following:
"Subsection (a), the provision at issue here, was an entirely new `catchall' recusal provision, covering both `interest or relationship' and `bias or prejudice' grounds, see Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988)but requiring them all to be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance. Quite simply and quite universally, recusal was required whenever `impartiality might reasonably be questioned.'"
Liteky v. United States, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). See also In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955).
In Ex parte Duncan, 638 So.2d 1332 (Ala.), cert. denied, 513 U.S. 1007, 115 S.Ct. 528, 130 L.Ed.2d 432 (1994), the Alabama Supreme Court, interpreting Canon 3.C., Alabama Canons of Judicial Ethics, stated that the question is not whether "the judge was impartial in fact, but whether another person, knowing all of the circumstances, might reasonably question the judge's impartialitywhether there is an appearance of impropriety." The Supreme Court declined to issue a writ of mandamus because there was no evidence that the trial court was "personally biased" against Duncan. The situation presented here is different from the situation presented in Duncan, because it does not involve Canon 3.C.(1)(a)a personal biasbut rather Canon 3.C.(1)a situation where the trial court's impartiality might reasonably be questioned.
We have never had occasion to specifically address whether Canon 3.C.(1)a situation where the impartiality of a judge might reasonably be questionedand Canon 3.C.(1)(a)a situation where there is a direct personal biasare separate provisions of Canon 3.C. However, we believe that prior caselaw and the wording of the Canon implies that the two provisions are separate and distinct. See Crowell v. May, 676 So.2d 941 (Ala.Civ.App.1996) (actual bias is not necessary in order to mandate recusal but "only a reasonable appearance of bias or impropriety"). See also Balogun v. Balogun, supra, where the Alabama Supreme Court stated the following about Alabama's Canons of Judicial Ethics:
"At early common law, and prior to the adoption of the Alabama Canons of Judicial Ethics, mandamus was granted to require a judge to recuse himself only if the judge had a personal or pecuniary interest, Fulton [v. Longshore, 156 Ala. 611, 46 So. 989 (1908) ], or if the judge's personal rights were at stake. Fulton, *1140 156 Ala. at 614, 46 So.2d at 990, citing Ex parte State Bar Ass'n, [92 Ala. 113, 8 So. 768 (1890) ].
"The adoption of the Canons of Judicial Ethics, which have the force of law, provided a new standard. See Wallace v. Wallace, 352 So.2d 1376 (Ala.Civ.App. 1977).
"Canon 2(A) states:
"A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
"Given the concept of promoting public confidence in the system, Canon 3(C)(1) states that `[a] judge should disqualify himself in a proceeding in which... his impartiality might reasonably be questioned' by members of the public, a party, or counsel. See Wallace, supra; Acromag-Viking v. Blalock, 420 So.2d 60 (Ala.1982); affirmed on other grounds, 474 So.2d 91 (Ala.1985)."
516 So.2d at 608-09. See also Ex parte Price, 715 So.2d 856 (Ala.Crim.App.1997).
The United States Supreme Court, when interpreting 28 U.S.C. § 455, stated that provisions similar to our Canon 3.C.(1) and Canon 3.C.(1)(a) are separate provisions that are to be evaluated under the facts presented in each case. We agree; we likewise hold that Canon 3.C.(1) and Canon 3.C. (1)(a) through 3.C.(1)(d) are separate and distinct provisions. Thus, a situation where the impartiality of a judge might reasonably be questioned may not always involve direct personal bias on the part of the judge.
In Richardson v. City of Trussville, 492 So.2d 625 (Ala.Crim.App.1985), this Court addressed an issue similar to the one presented in this case. Though ultimately agreeing with the State's argument that there was no error because the trial court had sentenced Richardson to a lesser prison term than the sentence he received in the district court, we stated the following:
"Richardson maintains that the trial court erred to reversal in not granting a motion for mistrial and another motion requesting that the trial judge recuse himself. Both motions are grounded on the trial judge's statement that he would impose a stiffer sentence upon conviction in the trial de novo than the sentence imposed by the municipal court.
"....
"It is a `flagrant violation of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside.' North Carolina v. Pearce, 395 U.S. 711, 723-24, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969). It is no less a violation of due process when a harsher sentence is imposed upon a defendant for having successfully pursued a statutory right of appeal or collateral remedy. Id. To insure the absence of vindictiveness at sentencing, Pearce requires `that whenever a judge imposed a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear.' Id. at 725-26, 89 S.Ct. at 2080-81, 23 L.Ed.2d 656.
"However, the danger of vindictive sentencing is not inherent in a two-tiered trial de novo system such as that found in this state so that `Pearce does not apply to a sentence after an appeal and a trial de novo in a two-tier system for adjudicating criminal offenses. Colten v. Kentucky, 407 U.S. 104, 112-120, 92 S.Ct. 1953, 1958-1962, 32 L.Ed.2d 584 (1972).' Hardy v. State, 455 So.2d 265, 268 (Ala.Cr.App.1984); Clark v. City of Mobile, 357 So.2d 675, 677-78 (Ala.Cr. *1141 App.), cert. denied, 357 So.2d 680 (Ala. 1978); A. Campbell, Law of Sentencing § 42 (1978). Nevertheless, even in such a system, the possibility exists that a `defendant might prove actual vindictiveness and thereby establish a due process violation.' Wasman v. United States, 468 U.S. 559, [567,] 104 S.Ct. 3217, 3222, 82 L.Ed.2d 424 (1984).
"Here, the evidence of vindictiveness on the part of the judge at the trial de novo is clear. The record reflects the following comments prior to the sentencing aspect of the trial:
"`The Court: When I call this docket on these municipalities I said, gentlemen, when I try these cases they're going to get more than they get below if they're guilty. You weren't here when that occurred. He knows and everyone in this courtroom knows when they appeal up here, if you're going to appeal, then they're going to get more than they got below if they're guilty.
"`Mr. Turberville [Defense Counsel]: Could we have that on the record, Your Honor?
"`The Court: Put it on the record. If they're going to appeal up here and be found guilty I'm going to give more than they got below in most instances.
"`Mr. Turberville: And his honor stated that he had told the lawyers that they were here on the date that the case was first set that if they tried it they would receive more.
"`The Court: If they were found guilty and they tried it, yes, they were going to get more than the lower court.'
"These comments evidence the vindictive attitude condemned in Pearce as constitutionally impermissible. 395 U.S. at 723-25, 89 S.Ct. at 2080, 23 L.Ed.2d 656."
492 So.2d at 628-29. See also Draime v. State, 523 So.2d 137 (Ala.Crim.App.1988).
In Wright v. State, 628 So.2d 1071 (Ala. Crim.App.1993), the trial judge, when ruling on a motion for a mistrial, stated that if the motion was granted he would sentence Wright to the maximum sentence. The motion for a mistrial was granted, and Wright was retried and convicted. Before his sentence hearing Wright moved that the trial judge recuse himself, based on the judge's earlier remarks about Wright's sentence. The trial court denied the motion; Wright appealed. When reviewing this issue we stated:
"Trial judges should refrain from volunteering remarks regarding our sentencing before a finding of guilt has been made and before presentencing considerations are examined. In situations where premature remarks are made, a red flag is raised in regard to potential bias on the part of the judge. In such a case, this Court must closely review the remarks and conduct of the trial judge to ensure that the accused was, in fact, accorded fairness in all stages of his trial."
Judge Wilters's remarks show a "vindictive attitude," see Richardson, and imply that all individuals who seek to appeal their district court convictions to the circuit court will suffer a greater punishment if Judge Wilters is the presiding judge on the case. We believe that Judge Wilters's comments evidence an appearance of impropriety sufficient to warrant his recusal under Canon 3.C.(1). Judge Wilters abused his discretion in denying the motion to recuse. This petition for a writ of mandamus is due to be, and is hereby, granted.
PETITION GRANTED.
McMILLAN, P.J., and COBB and BASCHAB, JJ., concur.
SHAW, J., dissents, with opinion, which WISE, J., joins.
*1142 SHAW, Judge, dissenting.
In his answer to the mandamus petition, Judge Wilters has submitted an affidavit to this Court that states in part:
"At a pretrial hearing, I told Vaughn Steel Fowler, `If you are found guilty by the Jury, you will receive a greater sentence than you did in District Court.' And I further stated, `This is my policy with all appeals.'
"My statements to Mr. Fowler and to other appellants of District Court or Municipal Court were made when it became apparent to the Court that the Attorneys for Appellants were not telling their clients they could be sentenced to more time if convicted in Circuit Court than what they got in District or Municipal Court. I feel the Defendant/Appellant needs to be informed about all possible sentence ranges.
"In reality, Defendants are sentenced on a case-by-case basis and may or may not receive a greater sentence based on the facts and the recommendation of the prosecutor.
"I know nothing about the facts of Mr. Fowler's cases and consider Mr. Fowler innocent until he is proven guilty."
I wholeheartedly agree with the majority that it is a flagrant violation of the Fourteenth Amendment for a state trial judge to announce and follow a practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for having exercised his statutory right of appeal. As this Court noted in Richardson v. City of Trussville, 492 So.2d 625, 629 (Ala.Crim. App.1985):
"Nevertheless, even in such a system [a two-tiered trial de novo system], the possibility exists that a `defendant might prove actual vindictiveness and thereby establish a due process violation.'"
However, the limited facts before this Court in connection with this mandamus petition do not demonstrate personal bias on the part of Judge Wilters against Fowler. Those facts do, I think, suggest a form of judicial bias, in that Judge Wilters's remarks could be construed as evidencing a bias against a class of litigants, of which Fowler is a member. I note that the Alabama Supreme Court has held that alleged judicial bias (bias arising from a judicial source) is generally insufficient to require recusal under Canon 3.C.(1), Alabama Canons of Judicial Ethics. See, e.g., Ex parte Duncan, 638 So.2d 1332 (Ala. 1994); Ex parte Large, 501 So.2d 1208 (Ala.1986). I note further that in Richardson, a case squarely on point with the present case, this Court remanded the case for resentencing; it did not order the recusal of the trial judge. Richardson is therefore consistent with Ex parte Duncan, Ex parte Large, and other cases that stand for the general proposition that a trial judge's statements, although improper when considered within the context of a particular case, are not necessarily grounds for recusal when they do not arise from an extrajudicial source. See also Ex parte Hunt, 642 So.2d 1060 (Ala.1994); Kitchens v. Maye, 623 So.2d 1082 (Ala. 1993); Ex parte Whisenhant, 555 So.2d 235 (Ala.1989); Ex parte Melof, 553 So.2d 554 (Ala.1989), abrogated in part by Ex parte Crawford, 686 So.2d 196 (Ala.1996); Medical Arts Clinic, P.C. v. Henry, 484 So.2d 385 (Ala.1986); Ex parte Knotts, 716 So.2d 262 (Ala.Crim.App.1998); Stewart v. State, 730 So.2d 1203 (Ala.Crim.App.1997); Ex parte Bryant, 675 So.2d 552 (Ala.Crim. App.1996); Bush v. State, 695 So.2d 70 (Ala.Crim.App.1995), aff'd, 695 So.2d 138 (Ala.1997); Beard v. State, 661 So.2d 789 (Ala.Crim.App.1995); Riddle v. State, 669 So.2d 1014 (Ala.Crim.App.1994); Parker v. State, 587 So.2d 1072 (Ala.Crim.App.1991); Wright v. State, 628 So.2d 1071 (Ala.Crim. App.1993); Adkins v. State, 600 So.2d 1054 *1143 (Ala.Crim.App.1990); and Houston v. State, 565 So.2d 277 (Ala.Crim.App.1990).
I recognize that Liteky v. United States, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), in which the United States Supreme Court construed a federal statute similar to Canon 3.C.(1), is persuasive authority with respect to the proper interpretation of Canon 3.C.(1).[2] However, based upon my reading of Ex parte Duncan, Ex parte Large, and other cases from the Alabama Supreme Court, I am concerned that this Court may have no constitutional authority to construe Canon 3.C.(1) in accordance with Liteky. This Court cannot expressly or implicitly overrule a decision of the Alabama Supreme Court, and I question whether the decisions of that Court can be adequately distinguished so as to open the door for this Court to apply the Liteky construction to Canon 3.C.(1). The rationale that has been applied by the Alabama Supreme Court has not been entirely clear; however, that Court has consistently used restrictive language indicating that bias justifying disqualification under Canon 3.C.(1) must stem from an extrajudicial source and must be personal in nature. For example, in Ex parte Large, supra, at 1210, the Court, quoting United States v. Grinnell, 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966), stated: "`The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'" I do note that in Parker, supra, this Court recognized an exception to the extrajudicial-source doctrine when the movant demonstrates "`"pervasive bias and prejudice."'"
587 So.2d at 1097, quoting McWhorter v. City of Birmingham, 906 F.2d 674, 678 (11th Cir.1990). See also Stewart, supra, and Beard, supra, which use the pervasive-bias-and-prejudice language. See Liteky, where the Court noted:
"It is wrong in theory, though it may not be too far off the mark as a practical matter, to suggest, as many opinions have, that `extrajudicial source' is the only basis for establishing disqualifying bias or prejudice. It is the only common basis, but not the exclusive one, since it is not the exclusive reason a predisposition can be wrongful or inappropriate. A favorable or unfavorable predisposition can also deserve to be characterized as `bias' or `prejudice' because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment. (That explains what some courts have called the `pervasive bias' exception to the `extrajudicial source' doctrine. See, e.g., Davis v. Board of School Comm'rs of Mobile County, 517 F.2d 1044, 1051 (C.A.5 1975), cert. denied, 425 U.S. 944 (1976).)"
510 U.S. at 551, 114 S.Ct. 1147 (emphasis in original).
I find it unnecessary to second-guess the opinions of the Alabama Supreme Court discussing Canon 3.C.(1); even if I were to apply the construction of Canon 3.C.(1) adopted by the majority or the pervasive-bias-and-prejudice exception to the extrajudicial-source doctrine previously adopted by this Court, I could not agree that a writ of mandamus should issue in this particular case. The Liteky Court summarized its holding as follows:
"For all these reasons, we think that the `extrajudicial source' doctrine, as we have described it, applies to § 455(a). As we have described it, however, there *1144 is not much doctrine to the doctrine. The fact that an opinion held by a judge derives from a source outside judicial proceedings is not a necessary condition for `bias or prejudice' recusal, since predispositions developed during the course of a trial will sometimes (albeit rarely) suffice. Nor is it a sufficient condition for `bias or prejudice' recusal since some opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in a scholarly reading) will not suffice. Since neither the presence of an extrajudicial source necessarily establishes bias, nor the absence of an extrajudicial source necessarily precludes bias, it would be better to speak of the existence of a significant (and often determinative) `extrajudicial source' factor, than of an `extrajudicial source' doctrine, in recusal jurisprudence.
"The facts of the present case do not require us to describe the consequences of that factor in complete detail. It is enough for present purposes to say the following: First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. See United States v. Grinnell Corp., 384 U.S. [563], at 583 [(1966)]. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in Berger v. United States, 255 U.S. 22 (1921), a World War I espionage case against German American defendants: `One must have a very judicial mind, indeed, not [to be] prejudiced against the German-Americans' because their `hearts are reeking with disloyalty.' Id., at 28 (internal quotation marks omitted). Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administrationeven a stern and short-tempered judge's ordinary efforts at courtroom administrationremain immune."
510 U.S. at 554-56, 114 S.Ct. 1147 (emphasis in first paragraph original; other emphasis added).
Mandamus is an extraordinary remedy that will not lie unless the petitioner can show a clear legal right to relief. Ex parte Army Aviation Ctr. Fed. Credit Union, 477 So.2d 379 (Ala.1985). Judge Wilters states in his affidavit that (for reasons that are not entirely clear to me) he told Fowler that he could expect a greater sentence *1145 if convicted, based on his policy of telling all of those who appear before him challenging district or municipal court judgments that they would (not that they might) receive a greater sentence if they were found guilty. Remarks of this kind, standing alone and viewed objectively, would appear to the average person to indicate bias, i.e., vindictiveness on the part of Judge Wilters against those exercising their statutory right to appeal to circuit courtbias so deep-seated that the fairness of any sentence would be subject to question. However, Judge Wilters also states in his affidavit: "In reality, Defendants are sentenced on a case-by-case basis and may or may not receive a greater sentence based on the facts and the recommendation of the prosecutor." Viewed in the abstract, these remarks, made in response to the mandamus petition, would appear to the average person to indicate impartiality on the part of Judge Wilters in his approach to sentencing in cases tried de novo in his court. On the other hand, when viewed in conjunction with his other remarks, Judge Wilters's recantation of his remarks concerning his sentencing policy could, as the majority concludes, appear to the average person to be self-serving and lacking in credibility.[3] Nevertheless, the Alabama Supreme Court attaches significance to a trial judge's reaffirmation of impartiality following comments made during a judicial proceeding causing a party to question the judge's partiality; that Court has indicated a hesitance to issue a writ of mandamus or to reverse under such circumstances. See Ex parte Large, supra, at 1211 ("Based on the foregoing, this Court cannot find that the petitioners have made a clear showing that recusal is required in this case. Judge Price unequivocally states that he is not biased against petitioners and that he holds no bias for or against either side in this action."); see also Hartman v. Board of Trustees of University of Alabama, 436 So.2d 837, 841 (Ala.1983) ("While the trial judge's remarks to Hartman's attorney were of an unfortunate and intemperate nature, the record indicates that he recognized that fact, and apologized in open court.").
There are two fundamental judicial policies reflected in the law of recusal. The general rule of recusal embodied in Canon 3.C.(1) should be applied in such a way as to strike a balance between the policy requiring a judge to hear and decide cases and the policy requiring a judge to be an impartial decision-maker. Judge Wilters has taken an oath to fairly decide the cases before him. By continuing to make remarks such as those he made to Fowler, in essence announcing his intention to follow an across-the-board policy of enhanced sentences in cases of this kind (although, in reality, he may not follow such a policy), Judge Wilters will cast unnecessary doubt over the sentences he imposes. See Richardson, supra; Wright, supra. However, he has clearly stated under oath that he will sentence on a case-by-case basis, with due regard to the facts and the recommendation of the prosecutor. By issuing its writ of mandamus under these circumstances, this Court (I believe unnecessarily) calls into question Judge Wilters's ability to sit on any criminal case appealed de novo to his court. Considering our stringent mandamus standard of review (clear showing that recusal is required), in conjunction with Judge Wilters's recantation of his remarks, as well as existing caselaw from this Court and from the Alabama Supreme Court, as noted above, I cannot say, as a matter of law, that Judge Wilters's *1146 initial in-court remarks to Fowler concerning his sentencing policy, in and of themselves, mandate his recusal through this Court's issuance of the writ of mandamus. I hasten to point out, however, that if Fowler is found guilty in circuit court and if Judge Wilters were to remain on the case and impose a greater sentence than the one Fowler received in district court, then Fowler would have an adequate remedy by appeal, in which he could challenge his sentence on due process grounds, in accordance with the general principles set out in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). See Richardson, supra.
For these reasons, I would deny the petition; therefore, I respectfully dissent.
NOTES
[1] Section 12-1-12, Ala.Code 1975, provides:

"No judge of any court shall sit in any case or proceeding in which he is interested or related to any party within the fourth degree of consanguinity or affinity or in which he has been of counsel or in which is called in question the validity of any judgment or judicial proceeding in which he was of counsel or the validity or construction of any instrument or paper prepared or signed by him as counsel or attorney, without the consent of the parties entered of record or put in writing if the court is not of record."
[2] I note that Liteky has been previously cited by this Court. See Ex parte Knotts, supra, at 267-68. The Alabama Supreme Court has, to my knowledge, never discussed it.
[3] "Recant" is defined in Black's Law Dictionary (7th ed.1999), as "[t]o withdraw or renounce (prior statements or testimony) formally or publicly." Judge Wilters's affidavit was filed with this Court and served on Fowler through his counsel in accordance with Rule 25(b), Ala. R.App. P.