PER CURIAM.
Charles Salvagio appeals the circuit court's order finding him guilty of criminal contempt, as defined by Rule 33.1(b)(3)(b), Ala. R. Crim. P. Salvagio was ordered to be confined in the Jefferson County jail for 72 hours and was ordered to pay a $100 fine in compliance with § 12-11-30(5), Ala. Code 1975.
The record indicates that Salvagio was one of the attorneys who represented Steven Petric in his capital-murder trial, at the end of which Petric was convicted of capital murder and sentenced to death. Petric v. State, 157 So.3d 176 (Ala. Crim. App. 2013). In May 2015, Petric filed a Rule 32, Ala. R. Crim. P., petition for postconviction relief alleging ineffective assistance of trial counsel.
On August 29, 2017, an evidentiary hearing was held on Petric's Rule 32 petition. Judge Tracie Todd presided. At the beginning of the evidentiary hearing, the State invoked the general exclusionary rule for witnesses. Salvagio was the first witness. He testified that, immediately before the evidentiary hearing, he had briefly spoken with Dr. Kimberley Ackerson, another potential witness in the Rule 32 hearing, about the case. Judge Todd later admonished all witnesses that they were not to have any conversations or contact with other witnesses and that they were not to discuss the case with anyone until the process was concluded. The evidentiary hearing continued the following day, and Salvagio was again called to testify. During Salvagio's testimony, he testified that the previous night, he had telephoned Rick Miller, another potential witness in the Rule 32 proceeding, and briefly discussed the case with Miller. Later in the hearing, following a second admonishment by Judge Todd for witnesses to refrain from discussing the case with anyone connected to Petric's case, Edward Tumlin, Salvagio's cocounsel during Petric's trial, testified that Salvagio had also called him the night before and briefly discussed what had happened in court the previous day.
On August 31, 2017, the circuit court issued an order instructing Salvagio to "show cause as to why his conduct [was] not a display of willful disobedience or resistance to the Court's unambiguous and lawful order not to have contact with anyone involved with [Petric's Rule 32] petition." (C. 9.)
On September 20, 2017, Salvagio filed a "Petition for Disqualification and Recusal," requesting that Judge Todd recuse herself from his contempt proceedings. (C. 94.) Salvagio claimed that it was a violation of Canons 2 and 3.C of the Alabama Canons of Judicial Ethics for Judge Todd to preside over his contempt proceeding because there was "an appearance of impropriety" and "that her impartiality might be reasonably questioned in that she [publicly] identified [Salvagio] as a supporter, financial and otherwise, of her political opponent in a contested judicial election, and his co-counsel in Mr. Petric's trial." (C. 94-96.) On September 21, 2017, before the contempt proceeding, arguments were heard from counsel regarding the recusal *313 issue. Judge Todd denied Salvagio's petition for recusal. After Judge Todd's denial of Salvagio's request for recusal, Salvagio moved the court to stay the contempt proceeding to allow him time to file a petition for mandamus on the recusal matter, which motion the circuit court denied.
The circuit court subsequently held a contempt proceeding. At the conclusion of the hearing, the court found that Salvagio had disregarded an order from the circuit court and held Salvagio in contempt of court. Salvagio appealed the circuit court's contempt adjudication.
On appeal, Salvagio argues that the circuit judge erred by failing to recuse herself from his contempt proceedings.[1] Salvagio claims that Judge Todd's presiding over his contempt proceeding violated Canons 2 and 3.C of the Alabama Canons of Judicial Ethics. Specifically, Salvagio alleges that Judge Todd's impartiality might reasonably be questioned because Judge Todd questioned him on the witness stand regarding his support -- financial and otherwise -- of her political opponent.
To support his argument, Salvagio cites the following testimony that occurred during Petric's Rule 32 evidentiary hearing:
"THE COURT [Judge Todd]: While they're doing that, Mr. Salvagio, did Ms. Ladner[2 ] come to you as a donor for her campaign or to be on her campaign committee?
"[Salvagio:] Judge, I think she basically wanted to know if she could use my name, I believe.
"THE COURT: On her campaign?
"[Salvagio:] I don't know, Judge.
"THE COURT: Did you contribute to her campaign?
"[Salvagio:] I don't think I gave her any money. I'm not sure. I give money to everybody.
"THE COURT: Were you on Judge Cole's[3 ] committee or contribute to his campaign?
"[Salvagio:] I did.
"THE COURT: Okay. Do you know how much you gave to Judge Cole's campaign?
"[Salvagio:] I gave him $500.
"THE COURT: Okay. Was that both times he ran or --
"[Salvagio:] I don't know, Judge. He was running against you --
"THE COURT: No, seriously, not because I ran against him, but --
"[Salvagio:] No, I probably did, Judge. I don't remember. I know the last time I did."
(R. 170-71.)[4] The State maintains on appeal that the testimony was "banter" that was irrelevant to the proceeding, which occurred on the first day of the evidentiary hearing before the question of Salvagio communicating with other witnesses arose. (State's brief, at 30.)
*314 When the recusal motion was addressed by the parties and the circuit court before the contempt proceeding, Judge Todd stated that the questions "had to do with the outrageousness of the information that [she] was hearing about the way the trial was conducted," and that she had asked the questions during the Rule 32 proceeding in an attempt to understand why the trial court would allow Salvagio to remain as Petric's defense counsel when Salvagio was "operating in the manner that Mr. Salvagio was operating in." (C.R. 12-13.) In her written order adjudicating Salvagio guilty of contempt, Judge Todd further addressed the recusal issue. Judge Todd acknowledged that, during the Rule 32 proceeding, she questioned Salvagio about his political contributions in support of Judge William Cole, her political opponent in a judicial campaign. However, Judge Todd stated that the line of questioning was not based on Salvagio's "rightful choice to contribute to the Court's opponent in the 2012 General Election," and she asserted that "Salvagio's political involvement with Judge Cole became relevant to the Rule 32 proceedings." (C. 15.) Judge Todd continued to support her decision to deny the recusal motion by stating that the court "became interested in all possible circumstances that would explain what seemed to be nonsensical happenings" in Petric's trial, and that her questions regarding Salvagio's campaign contributions were "based wholly on the possibility of irregular allowances afforded to Mr. Salvagio as lead trial counsel in Mr. Petric's capital murder case." (C. 15.)
"All judges are presumed to be impartial and unbiased," Woodall v. State, 730 So.2d 627, 638 (Ala. Crim. App. 1997), aff'd in pertinent part, rev'd on other grounds, 730 So.2d 652 (Ala. 1998), and "[t]he burden i[s] on the party making a motion to recuse to establish that the trial judge is biased or prejudiced against the defendant." Stallworth v. State, 868 So.2d 1128, 1140 (Ala. Crim. App. 2001).
"The burden is on the party seeking recusal to present evidence establishing the existence of bias or prejudice. Otwell v. Bryant, 497 So.2d 111, 119 (Ala. 1986). Prejudice on the part of a judge is not presumed. Hartman v. Board of Trustees, 436 So.2d 837 (Ala. 1983) ; Duncan v. Sherrill, 341 So.2d 946 (Ala. 1977) ; Ex parte Rives, 511 So.2d 514, 517 (Ala. Civ. App. 1986). ' "[T]he law will not suppose a possibility of bias or favor in a judge who is already sworn to administer impartial justice and whose authority greatly depends upon that presumption and idea." ' Ex parte Balogun, 516 So.2d 606, 609 (Ala.1987), quoting Fulton v. Longshore, 156 Ala. 611, 46 So. 989 (1908). Any disqualifying prejudice or bias as to a party must be of a personal nature and must stem from an extrajudicial source. Hartman v. Board of Trustees of the University of Alabama, 436 So.2d 837 (Ala. 1983) ; Reach v. Reach, 378 So.2d 1115 (Ala. Civ. App. 1979). Thus,
" ' "[T]he disqualifying prejudice of a judge does not necessarily comprehend every bias, partiality, or prejudice which he may entertain with reference to the case, but must be of a character, calculated to impair seriously his impartiality and sway his judgment, and must be strong enough to overthrow the presumption of his integrity." '
" Ross v. Luton, 456 So.2d 249 at 254 (Ala. 1989), quoting Duncan v. Sherrill, 341 So.2d 946, 947 (Ala. 1977), quoting 48 C.J.S. Judges § 82(b)."
Ex parte Melof, 553 So.2d 554, 557 (Ala. Crim. App. 1989), abrogated on other grounds by Ex parte Crawford, 686 So.2d 196 (1996). " 'Adverse rulings during the *315 course of the proceedings are not by themselves sufficient to establish bias and prejudice.' Hartman v. Board of Trustees of the Univ. of Alabama, 436 So.2d 837, 841 (Ala. 1983)." Ex parte Adams, 910 So.2d 827, 829 (Ala. Crim. App. 2005). Furthermore, " 'a mere accusation of bias that is unsupported by substantial fact does not require the disqualification of a judge.' " Id.
Canon 2A, Alabama Canons of Judicial Ethics, provides, in pertinent part:
"A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."
Canon 3C.(1)(a), provides, in pertinent part:
"(1) A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned, including but not limited to instances where:
"(a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding ...."
In Ex parte Duncan, 638 So.2d 1332 (Ala. 1994), the Alabama Supreme Court explained:
"Under Canon 3(C)(1), Alabama Canons of Judicial Ethics, recusal is required when 'facts are shown which make it reasonable for members of the public or a party, or counsel opposed to question the impartiality of the judge.' Acromag-Viking v. Blalock, 420 So.2d 60, 61 (Ala. 1982). Specifically, the Canon 3(C) test is: 'Would a person of ordinary prudence in the judge's position knowing all of the facts known to the judge find that there is a reasonable basis for questioning the judge's impartiality?' Matter of Sheffield, 465 So.2d 350, 356 (Ala. 1984). The question is not whether the judge was impartial in fact, but whether another person, knowing all of the circumstances, might reasonably question the judge's impartiality -- whether there is an appearance of impropriety. Id.; see Ex parte Balogun, 516 So.2d 606 (Ala. 1987) ; see, also, Hall v. Small Business Administration, 695 F.2d 175 (5th Cir. 1983)."
638 So.2d at 1334.
"The standard for recusal is an objective one: whether a reasonable person knowing everything that the judge knows would have a 'reasonable basis for questioning the judge's impartiality.' [ Ex parte] Cotton, 638 So.2d [870] at 872 [ (Ala. 1994) ]. The focus of our inquiry, therefore, is not whether a particular judge is or is not biased toward the petitioner; the focus is instead on whether a reasonable person would perceive potential bias or a lack of impartiality on the part of the judge in question. In In re Sheffield, 465 So.2d 350, 357 (Ala. 1984), this Court wrote:
" '[T]he reasonable person/appearance of impropriety test, as now articulated in Canon 3(C)(1), in the words of the Supreme Court of the United States, may "sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties." In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). As stated in Canon 1 of the Code of Judicial Ethics, "An independent and honorable judiciary is indispensable to justice in our society," and this requires avoiding all appearance of impropriety, even to the point of resolving all reasonable doubt in favor of recusal.'
"(Some emphasis original; some emphasis added [in Bryant ].)."
Ex parte Bryant, 682 So.2d 39, 41 (Ala. 1996).
*316 "Any disqualifying prejudice or bias as to a party must be of a personal nature and must stem from an extrajudicial source." Ex parte Melof, 553 So.2d 554, 557 (Ala. 1989), abrogated on other grounds, Ex parte Crawford, 686 So.2d 196 (Ala. 1996).
" ' "The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.' "
Ex parte Duncan, 638 So.2d at 1334, quoting Ex parte Large, 501 So.2d 1208, 1210 (Ala. 1986), quoting in turn United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966).
Applying these principles to Salvagio's contention that Judge Todd should have recused herself from his contempt proceeding, we must determine "whether a reasonable person would perceive potential bias or a lack of impartiality on the part of the judge in question" based on the particular facts underlying this case. Bryant, 682 So.2d at 41.
Considering the facts of this particular case, we agree with Salvagio that Judge Todd should have recused herself in this matter. Salvagio presented facts of an apparent prejudice or bias that would make it reasonable for members of the public and a person of ordinary prudence to question her impartiality. The potential perceived bias -- i.e., Salvagio's contribution and support of Judge Todd's opponent in a judicial election -- was of a personal nature. Judge Todd stated that her questions were relevant to the Rule 32 proceedings because she became interested in all possible circumstances to explain the happenings of the trial. Judge Todd also stated that her questions were based on the possibility of irregular allowances afforded to Salvagio, presumably by the trial judge, during the trial. Our review of the Rule 32 evidentiary hearing indicates that these allegations were not alleged by either party during the Rule 32 proceeding and were not relevant. Judge Todd's line of questioning to Salvagio raises the appearance of impropriety or impartiality under Canon 3.C(1), Alabama Canons of Judicial Ethics.
We recognize that Judge Todd may not have actual bias or lack impartiality in this case. However, we find that a reasonable person would perceive potential bias or a lack of impartiality on the part of the Judge Todd, based on her failure to recuse after questioning Salvagio regarding his support of her political opponent. This is especially so because Salvagio was under oath and on the witness stand in Judge Todd's courtroom when she asked those questions. Judge Todd had a clear duty to recuse herself from the contempt proceedings and to allow another judge to handle the contempt hearing.
The judgment in this matter is reversed and Judge Todd is ordered to recuse herself from presiding over Salvagio's contempt proceeding. A new judge shall be assigned to this matter in accordance with the established recusal procedure in the Jefferson Circuit Court. This cause is hereby remanded to the circuit court for a new trial on the issue of contempt, consistent with this opinion. In view of the fact that we have ordered Judge Todd to recuse herself from the contempt proceeding and directed the circuit court to conduct a new hearing, we pretermit any ruling on issues concerning the circuit court's disposition of Salvagio's contempt adjudication.
REVERSED AND REMANDED.
Windom, P.J., and Welch, Kellum, Burke, and Joiner, JJ., concur.

We note that Salvagio raised other issues on appeal, including arguments challenging the validity of the court's finding of contempt. However, because of the disposition of the current issue, we pretermit any discussion of further arguments.

Ms. Ladner was one of Salvagio's cocounsel during Petric's capital-murder trial.

We note that Judge Cole was the trial judge in Petric's capital-murder case and opposed Judge Todd in her 2012 judicial campaign.

The record in this case contains two separate transcripts. The record from the Rule 32 proceeding will be denoted as "(R. ----.)" The record from the contempt proceeding will be denoted as "(C.R. ----.)"