Joe Crowell, the defendant, appeals from the trial court's order granting the plaintiff, Arlene May, a new trial in a negligence case after the jury had returned a verdict favoring Crowell.
The record reveals the following pertinent facts: Crowell and May were involved in an automobile accident in January 1993. Thereafter, May sued Crowell, alleging, among other things, that Crowell had negligently and/or wantonly allowed his vehicle to collide with hers, causing injuries and property damage. May demanded a jury trial and sought compensatory and punitive damages. Crowell denied the allegations and asserted several affirmative defenses, including contributory negligence.
During the trial, the judge disclosed to the parties' counsel that his stepdaughter, Michelle, was involved in a serious relationship with the stepson of a defense witness, Bonita Crowell Reeves, the daughter of Crowell. Further, the judge disclosed that his son and Reeves's biological son had played together at his house on two or three occasions. Subsequently, May moved for a mistrial; that motion was denied.
At the conclusion of the proceedings, held in January 1995, the jury returned a verdict in favor of Crowell, and the trial court entered a judgment consistent with that verdict. In February 1995, May moved for a new trial, asserting, in pertinent part:
 "1. Half way into the second and final day of the trial the Judge advised both Counsel . . . of a possible conflict. The Judge stated to Counsel . . . that it did not realize the relationship which existed between the Judge and [Reeves], until the weekend recess between the trial days. *Page 943 
 "2. The Court/Judge notified both Counsel . . . of the following:
 "(a) That Bonita Crowell Reeves, the daughter of [Crowell] and a witness for [Crowell], visited the Judge's home with [Michelle] and played with the Judge's horses during the weekend recess between the trial days.
 "(b) That the Judge's stepdaughter, Michelle, and Bonita Crowell Reeves' stepson were in a romantic relationship of such a serious nature that the Judge would not rule out marriage.
 "(c) That the relationship between Michelle and Bonita Crowell Reeves' stepson had existed for a long period of time.
 "(d) That Bonita Crowell Reeves' son had played with the Judge's son at the Judge's home on several occasions in the recent past, prior to the date of this trial.
 "(e) That during the trial, Bonita Crowell Reeves would refer to the Judge by his first name, Ashley.
 "(f) The Court/Judge further stated on the record, (paraphrased):
 "If I knew of this situation prior to this trial I would have recused myself and allowed Judge Stokes to try this case."
After a hearing on the post-judgment motion, the trial court granted May's motion, stating, in pertinent part:
 "When I started the trial of this case I had no idea [Crowell] was Bonita Reeves' father or that the two were related at all. I would not have known Bonita Reeves had I seen her. I did not know she was a witness. Additionally, I am completely satisfied that [May] had a fair and impartial trial.
 "Still, Shane Reeves has a long-standing relationship with my step-daughter Michelle (who is a member of my household). At the time of trial he was a regular and frequent visitor in my home. Another person might reasonably question whether or not he was in a position to 'have the ear of the judge' in this case, directly or through my step-daughter.
 "Further, at the time of trial Shane was a member of Bonita Reeves' household, she being his step-mother, and Ms. Reeves is obviously and naturally aligned with the cause of Joe Crowell. Rightly or wrongly, another person might reasonably suspect Shane Reeves is subject to a degree of influence from her. It is not far-fetched for [May] to express concern that these relationships appear to open doors for [Crowell], even though that is not the situation.
 "In view of the foregoing, and considering the other facts and circumstances involved, [May] is entitled to a new trial. I do not find that there is a real impropriety, but there is an appearance of impropriety. The motion for new trial is GRANTED. I now recuse myself from further participation herein."
(Emphasis added.) (Footnotes omitted.)
Crowell appeals. The only issue presented for review is whether the trial court abused its discretion in setting aside the jury verdict and ordering a new trial.
Whether to grant or to deny a motion for new trial is within the sound discretion of the trial court, and the court's ruling on that question comes with a strong presumption of correctness. Boykin v. Keebler, 648 So.2d 550 (Ala. 1994).
Crowell contends that the trial court erred because, he says, there was no reasonable basis, under the facts presented, from which a reasonable person could question the trial judge's impartiality, relying on Collins v. Windsor, 505 So.2d 1205
(Ala. 1987). There, our Supreme Court stated, "[A] judge should disqualify himself if a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find that there is a reasonable basis for questioning the judge's impartiality." 505 So.2d at 1208. (Citations omitted.) In that case, our Supreme Court affirmed the trial court's decision not to grant a new trial, concluding that the trial judge's impartiality could not be reasonably questioned, in spite of the fact that the plaintiff's daughter, who testified at the hearing on the motion for new trial, worked in the courthouse and had professional *Page 944 
contact with most of the court personnel, including the judges. The facts of that case are clearly distinguishable and not dispositive of the instant case. Furthermore, we are also aware that recusal is not required by a mere accusation of bias unsupported by substantial fact. See Miller v. Miller,385 So.2d 54 (Ala.Civ.App. 1980), cert. denied, Ex parte Miller,385 So.2d 56 (Ala. 1980).
Canon 3(C)(1) of the Alabama Canons of Judicial Ethics
clearly states that "[a] judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned." (Emphasis added.) Therefore, it appears that actual bias is not necessary for a judge to recuse — only a reasonable appearance of bias or impropriety. The strictest application of this rule may "sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.' "In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625,99 L.Ed. 942 (1955) (citations omitted). Furthermore, our Supreme Court has written:
 "Recusal is required when 'facts are shown which make it reasonable for members of the public or a party, or counsel opposed to question the impartiality of the judge.' . . . The question is not whether the judge was impartial in fact, but whether another person, knowing all of the circumstances, might reasonably question the judge's impartiality — whether there is an appearance of impropriety."
Ex parte Duncan, 638 So.2d 1332, 1334 (Ala. 1994), cert. denied,Duncan v. Alabama, ___ U.S. ___, 115 S.Ct. 528, 130 L.Ed.2d 432
(1994) (citations omitted). All reasonable doubts should also be resolved in favor of recusal. Matter of Sheffield,465 So.2d 350 (Ala. 1984).
After thoroughly reviewing the record, and given the later disclosure of the relationships that existed between the judge's family and the family of one of the parties, we cannot say that the trial court erred in granting the motion for new trial and in recusing himself from further involvement in this case. Therefore, the new trial order is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and MONROE, J., concur.