PER CURIAM.
The State of Alabama filed this petition for a writ of mandamus directing Judge Glenn Thompson to recuse himself from presiding over the retrial of Daniel Wade Moore’s capital-murder case. In 2003, Moore was convicted of capital murder for murdering Karen Croft Tipton during the course of committing a sexual abuse, a kidnapping, a robbery, and a burglary. The jury recommended that Moore be sentenced to life imprisonment without the possibility of parole. The circuit court sentenced Moore to death. Moore moved for a new trial alleging that the State failed to disclose exculpatory evidence. The circuit court granted Moore’s motion. Moore then moved that the indictment against him be dismissed and that any subsequent retrial be barred because, he argued, it would be a violation of the Double Jeopardy Clause. The circuit court granted Moore’s motion to dismiss the indictment. The State appealed. We reversed the circuit court’s dismissal of the capital-murder indictment and directed the court to reinstate the case to its active docket. See State v. Moore, 969 So.2d 169 (Ala.Crim.App.2006). Moore’s retrial is scheduled for July 2007.
In July 2006, the State moved that Judge Thompson recuse himself from presiding over Moore’s retrial. On January 29, 2007, the circuit court issued an order denying the motion. This petition for a writ of mandamus followed.[1]
Initially, we note that this issue is correctly before this Court by way of a petition for a writ of mandamus. “Mandamus is the appropriate vehicle by which to review a trial court’s ruling denying a motion to recuse.” Ex parte Bentley, 849 So.2d 997, 998 (Ala.Crim.App.2002).
The State asserts that Judge Thompson should recuse himself from Moore’s retrial because, it says, he has “pre-judged and denounced the state’s evidence,” and because, it says, he has shown a personal bias against the State’s prosecutor and investigator. It further asserts that the people of Morgan County view this case as Judge Thompson versus the State; therefore, the State argues, there is a public perception of impropriety in Judge Thompson’s presiding over Moore’s retrial.
*599 Both Moore and Judge Thompson have filed responses to this petition. Judge Thompson asserts that he is not biased against either the State or Moore; therefore, he says, there is absolutely no reason for him to recuse.
“In the administration of justice by a court of law, no principle is better recognized as absolutely essential than that every case, be it criminal or civil, and the parties involved therein are entitled to the ‘cold neutrality of an impartial judge.’ The right of litigants to a fair trial must be scrupulously guarded. Due to human limitation and imperfection, even judges, lest they are on constant guard, are susceptible to the manifestation of predilection by their conduct or remarks and thus incur the suspicion that they are biased. Particularly in a criminal case, it is imperative that a judicial tribunal accord to the prosecution a treatment no less fair and impartial than that to which the defense is entitled when it is common knowledge that the former is without right to receive an appellate review. In the words of Mr. Justice Cardozo, Snyder v. Massachusetts, 291 U.S. 97, 122, 54 S.Ct. 330, 78 L.Ed. 674 [ (1934) ], ‘But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true.’ ”
Peters v. Jamieson, 48 Haw. 247, 262-63, 397 P.2d 575, 585 (1964).
Canon 3.C.(1), Alabama Canons of Judicial Ethics, governs when a trial judge is required to recuse himself or herself from presiding over a case. The Canon states, in pertinent part:
“(1) A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned, in-eluding but not limited to instances where:
“(a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
“(b) He served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer in the matter, or the judge or such lawyer has been a material witness concerning it.”
The Alabama Supreme Court has stated the following concerning Canon 3.C.(1):
“Under Canon 3(C)(1), Alabama Canons of Judicial Ethics, recusal is required when ‘facts are shown which make it reasonable for members of the public or a party, or counsel opposed to question the impartiality of the judge.’ Acromag-Viking v. Blalock, 420 So.2d 60, 61 (Ala.1982). Specifically, the Canon 3(C) test is: ‘Would a person of ordinary prudence in the judge’s position knowing all of the facts known to the judge find that there is a reasonable basis for questioning the judge’s impartiality?’ Matter of Sheffield, 465 So.2d 350, 356 (Ala.1984). The question is not whether the judge was impartial in fact, but whether another person, knowing all of the circumstances, might reasonably question the judge’s impartiality— whether there is an appearance of impropriety. Id. see Ex parte Balogun, 516 So.2d 606 (Ala.1987); see, also, Hall v. Small Business Administration, 695 F.2d 175 (5th Cir.1983).”
Ex parte Duncan, 638 So.2d 1332, 1334 (Ala.1994).
In Ex parte Fowler, 863 So.2d 1136, 1138-40 (Ala.Crim.App.2001), we stated:
“The Canons of Judicial Ethics have the force and effect of law. Balogun v. Balo- *600 gun, 516 So.2d 606 (Ala.1987). Subsections (a) through (d) in Canon 3.C.(1) of the Canons of Judicial Ethics are examples of situations where a trial court’s impartiality might reasonably be questioned. The list does not purport to be inclusive. As subdivision (1) states, ‘including but not limited to instances where.... ’
“The United States Code includes a statute similar to Canon 3.C.(1), which defines when a judge must recuse from a case. See 28 U.S.C. § 455. This section reads, in part, as follows:
“ ‘(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
“ ‘(b) He shall also disqualify himself in the following circumstances:
“ ‘(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evi-dentiary facts concerning the proceeding;
“ ‘(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it...
“Interpreting this statute, the United States Supreme Court stated the following:
“ ‘Subsection (a), the provision at issue here, was an entirely new “catchall” recusal provision, covering both “interest or relationship” and “bias or prejudice” grounds, see Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988) — but requiring them all to be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance. Quite simply and quite universally, recusal was required whenever “impartiality might reasonably be questioned.” ’
“Liteky v. United States, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). See also In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955).
[[Image here]]
“We have never had occasion to specifically address whether Canon 3.C.(1) — a situation where the impartiality of a judge might reasonably be questioned — and Canon 3.C.(l)(a) — -a situation where there is a direct personal bias — are separate provisions of Canon 3.C. However, we believe that prior caselaw and the wording of the Canon [imply] that the two provisions are separate and distinct. See Crowell v. May, 676 So.2d 941 (Ala.Civ.App.1996) (actual bias is not necessary in order to mandate recusal but ‘only a reasonable appearance of bias or impropriety’)....
“The United States Supreme Court, when interpreting 28 U.S.C. § 455, stated that provisions similar to our Canon 3.C.(1) and Canon 3.C.(l)(a) are separate provisions that are to be evaluated under the facts presented in each case. We agree; we likewise hold that Canon 3.C.(1) and Canon 3.C.(l)(a) through 3.C.(l)(d) are separate and distinct provisions. Thus, a situation where the impartiality of a judge might reasonably be questioned may not always involve direct personal bias on the part of the judge.”
According to the cases cited above, the State is not required to prove that Judge Thompson is in fact biased; instead it must show that there is an “appearance of impropriety” in Judge Thomp *601 son’s remaining on the case. See Ex parte Atchley, 951 So.2d 764, 769 (Ala.Crim.App.2006).[2] “A fair and impartial judge is the cornerstone of the integrity of the judicial system. Even the appearance of partiality can erode the public’s confidence in the integrity of the judiciary.” In re Judicial Disciplinary Proceedings Against Laatsch, 727 N.W.2d 488, 491 (Wis.2007). “ ‘[T]o recuse where there is an appearance of impropriety, is a duty owed to the public in order to promote confidence in the impartiality of the judiciary.’ Robin Farms, [Inc. v. Bartholome,] 989 S.W.2d [238] at 247 [ (Mo.Ct.App.1999) ].” Moore v. Moore, 134 S.W.3d 110, 115 (Mo.Ct.App.2004).
“The standard for recusal is an objective one: whether a reasonable person knowing everything that the judge knows would have a ‘reasonable basis for questioning the judge’s impartiality.’ [Ex parte] Cotton, 638 So.2d [870] at 872 [ (Ala.1994) ]. The focus of our inquiry, therefore, is not whether a particular judge is or is not biased toward the petitioner; the focus is instead on whether a reasonable person would perceive potential bias or a lack of impartiality on the part of the judge in question.”
Ex parte Bryant, 682 So.2d 39, 41 (Ala.1996). As Justice Kennedy wrote in his special concurrence in Liteky v. United States, 510 U.S. 540, 565, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994): “In matters of ethics, appearance and reality often converge as one.”
In Alabama, there is no per se ban on a trial judge’s presiding over the retrial of a defendant whose case has been reversed on appeal. As the Alabama Supreme Court stated in Ex parte Whisenhant, 555 So.2d 235, 238 (Ala.1989): “[T]he fact that the trial judge had presided over the defendant’s previous two sentencing trials was not grounds for disqualification. A trial judge need not recuse himself solely on the ground that he was the ‘same trial judge who had heard the case and imposed the death penalty’ in the defendant’s prior trial.”
However, the considerations set out by the United States Court of Appeals for the Second Circuit in United States v. Robin, 553 F.2d 8 (2d Cir.1977), are relevant in determining whether a judge should re-cuse himself or herself after a case has been reversed on appeal:
“Absent proof of personal bias requiring recusation, Title 28 U.S.C. § 144, the principal factors considered by us in determining whether further proceedings should be conducted before a different judge are (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.
“Where a judge has made detailed findings based on evidence erroneously admitted or factors erroneously considered, the circumstances sometimes are such that upon remand he or she either cannot reasonably be expected to erase the earlier impressions from his or her mind or may tend to lean over back *602 wards or overreact in an effort to be fair and impartial. A new fact-finder would not labor under any such handicap.... The seriousness of this problem in any particular case will depend upon a number of factors, including the nature of the proceeding, the firmness of the judge’s earlier-expressed views or findings, and the reasons for the reversal. Upon remand for a retrial, an additional factor bearing upon whether to reassign to another judge is whether the retrial will be before the judge as a fact-finder or sitting with a jury. See O’Shea v. United States, 491 F.2d 774, 779 (1st Cir.), overruled as to a different holding, Wingo v. Wedding, 418 U.S. 461, 473, n. 19, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974).”
553 F.2d at 10. See also Simon v. City of Clute, Texas, 825 F.2d 940 (5th Cir.1987); Maldonado Santiago v. Velazquez Garcia, 821 F.2d 822 (1st Cir.1987); Bercheny v. Johnson, 633 F.2d 473 (6th Cir.1980).
In his order dismissing Moore’s capital-murder indictment, Judge Thompson made the following findings of fact:
“The Defendant, Daniel Wade Moore, made an incriminating statement to his uncle while being returned to jail by his uncle and grandfather. At this time, the Defendant was addicted to crack cocaine. He was awaiting trial on another offense and was free on an appearance bond at the time said statement was made. The testimony was that the Defendant’s grandfather had signed a property bond and was concerned that his grandson would fail to appear for court. He and his son, ‘Sparky’ Moore, took the Defendant to the Morgan County Jail so that the Defendant’s grandfather could come off the bond of his grandson and prevent a bond forfeiture lien being placed against his property if the Defendant failed to appear for court. The testimony also stated that at the time the Defendant’s statement was made, he was writing bad checks on a regular basis, and to keep his scheme afloat, he had to stay out of jail. The Defendant attempted to convince his uncle that there were inmates in the jail that would hurt or kill him if they learned that he was in the Morgan County Jail. This Court will not speculate about this. However, it is not at all uncommon for a person addicted to crack cocaine, especially one involved in a check kiting scheme, to make any statement, true or false, and even against his own interest, to avoid being put in jail.
“At the trial of the Defendant, DNA evidence was presented by the prosecution. This evidence was not nuclear DNA which would have been able to identify the perpetrator with a very high degree of scientific certainty. The DNA evidence offered against the Defendant in this case was mitochondrial DNA. This evidence only failed to exclude the Defendant as the donor; however, it also did not exclude others as the possible donor of the sample tested. In fact, the trial of the Defendant was based almost entirely on circumstantial evidence. There is no direct evidence linking the Defendant to the scene of the crime. Additionally, the prosecution pointed to the circumstance that the Defendant had previously been employed by the burglar alarm company that installed the system belonging to the victim, stating that he knew how to disable it. However, the statement of Sarah Joyce Holden made to the Decatur Police, makes this evidence almost irrelevant.”
In response to the mandamus petition, Judge Thompson wrote:
*603 “Mr. Yaleska has accused the trial court of acting contemptuously toward him. If I displayed contempt or disrespect at times, I was simply responding in kind to the prosecutor’s disrespect, contemptuousness, and frequent violation of my orders.”
Also, attached to the State’s mandamus petition are several newspaper articles that were written about the case. One article reported: “The case also pits a veteran prosecutor against a powerful circuit judge.” Decatur Daily, June 18, 2006.
It is clear after reviewing the record of the original trial,[3] the motion for a new trial, and the subsequent proceedings, that there is a great deal of animosity between Judge Thompson and the prosecutor.[4] We realize that the circuit court was frustrated with the prosecutor’s failure to comply with its orders.[5] However,
“The vital point is that in sitting in judgment on such a misbehaving lawyer the judge should not himself give vent to personal spleen or respond to a personal grievance. These are subtle matters, for they concern the ingredients of what constitutes justice. Therefore, justice must satisfy the appearance of justice.”
Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954). “The judge must banish the slightest personal impulse to reprisal.... ” Cooke v. United States, 267 U.S. 517, 539, 45 S.Ct. 390, 69 L.Ed. 767 (1925).
After considering the long and tortured history in this case, as well as the clear animosity between the judge and the prosecutor, we believe that it would be difficult, if not impossible, for Judge Thompson to divorce himself from the previous proceedings in this case. Also, in Judge Thompson’s order dismissing the capital-murder indictment he made factual findings concerning the credibility of some of the State’s evidence, the strength of the State’s case against Moore, and the credibility of a statement that Moore made to police. It further appears that the public perception of this case is that it is not the State against the defendant, as it should be, but the prosecutor against the judge. See cases cited in Nature and Determination of Prejudice Caused by Remarks or Acts of State Trial Judge Criticizing, Rebuking, or Punishing Defense Counsel in Criminal Case as Requiring New Trial or Reversal — Individualized Determination, 104 A.L.R.5th 357 (2002); Disqualification of Judge by State, in Criminal Case, for Bias or Prejudice, 68 A.L.R.3d 509 (1976); Disqualification of Original Trial Judge to Sit on Retrial after Reversal or Mistrial, 60 A.L.R.3d 176 (1974); Disqualification of Original Trial Judge to Sit on Retrial after Reversal or Mistrial; Federal Cases, 22 A.L.R. Fed. 709 (1975); Rather, Disqualification of Judges for Prior Judicial Actions, 3 How. L.J. 228 (1957).
After considering the totality of the circumstances presented in this case, we hold that the State has met its burden of showing that there is an “appearance of impropriety” in Judge Thompson’s remaining on the case. The Robin factors weigh heavily in favor of recusal. See United States v. Robin, supra. “ ‘[T]o recuse where there is an appearance of impropriety, is a duty owed to the public in order to promote *604 public confidence in the impartiality of the judiciary.’ ” Moore, 134 S.W.3d at 115.
Accordingly, we grant this petition for a writ of mandamus and direct Judge Thompson to recuse himself from presiding over the retrial of Moore’s capital-murder case.
PETITION GRANTED; WRIT ISSUED.
BASCHAB, P.J., and McMILLAN, WISE, and WELCH, JJ., concur; SHAW, J., concurs in the result, without opinion.

. The State filed this mandamus petition within seven days of the circuit court’s order denying the motion to recuse. Accordingly, this petition is timely. See Ex parte Thomas, 828 So.2d 952 (Ala.2001), and Rule 21(a), Ala.R.App.P.

. After we issued a writ of mandamus in Atchley, the State filed a petition for a writ of mandamus against this Court in the Alabama Supreme Court. The Alabama Supreme Court denied that petition. See State v. Atchley, 951 So.2d 769 (Ala.2006).

. The State has asked that we take judicial notice of the record on appeal in case no. CR-04-0805, Moore's direct appeal.

. We fear that commenting on the particulars may compromise the ongoing proceedings in the circuit court.

.Several times in the trial judge's response, Judge Thompson stated that the prosecutor had lied during the proceedings.