SHAW, Justice.
These matters involve the administration of an estate. In case no. 1141293, Raymond Adams, the executor of the estate of Clifford Wayne Cleveland, appeals from a preliminary injunction issued against him at the request of the beneficiaries of the estate, Clifford Wayne Cleveland II (“Chip”) and Celeste Cleveland Minor. In that matter, we reverse and remand. In case no. 1140732, Adams petitions this Court for a writ of mandamus directing the trial court (1) to require the beneficiaries of the estate—Chip and Minor—to produce certain materials disclosing the assets and liabilities of the estate, (2) to vacate its order prohibiting Adams from hiring attorneys and accountants to assist him with the administration of the estate, (3) to vacate its order requiring Adams to produce certain corporate documents, and (4) to sanction the beneficiaries, and (5) directing the trial judge to recuse himself from further presiding over the underlying case. For the reasons discussed below, we deny that petition.

Facts and Procedural History

As discussed in Ex parte Adams, 168 So.3d 40 (Ala.2014) (“Adams I”), this litigation began following the death of Clifford Wayne Cleveland (“Cleveland”), on March 28, 2014. 168 So.3d at 41. Cleveland died possessed of assets with an estimated value of between $2 million and $3 million; however, as discussed in more detail below, those assets were significantly encumbered, rendering the estate potentially insolvent.
Cleveland’s will named two coexecutors of the estate: Louis C. Colley, Cleveland’s law partner, and Adams, Cleveland’s business partner.[1] The primary beneficiaries *782 of the will were Cleveland’s children, Chip and Minor. The facts, as stated in Adams I, are as follows:
“Colley and Adams petitioned the Au-tauga Probate Court to probate the estate and were granted letters testamentary. On April 30, 2014, the Autauga Circuit Court granted Chip and Minor’s motion, as beneficiaries under Cleveland’s will, to have the probate of the estate removed to that court.
“On May 5, 2014, Chip and Minor moved the circuit court to disqualify Adams as a coexeeutor of the estate, arguing as a basis for disqualification that Adams does not reside in Alabama. The circuit court set the motion for a hearing on May 27, 2014, and gave Adams ‘ten days to provide proof of his residency.’ ... On May 9, 2014, Chip and Minor moved the circuit court to prohibit Adams from retaining any third-party professionals, such as attorneys or CPAs, to assist with the administration of the estate, arguing that it was an unnecessary expense [because they were allegedly sufficiently familiar with Cleveland’s finances]. The circuit court entered an order on that date, granting the motion and prohibiting any coexecutor or beneficiary from hiring such professional help ‘until further order’ of the circuit court. The circuit court also set the issue for further discussion at the May 27 hearing.
“On May 16, 2014, Adams filed with the circuit court a statement of residency, acknowledging that ‘he currently resides in North Carolina’ but arguing that,
“ ‘[contrary to the Motion to Disqualify Co-Executor filed by [Chip and Minor], out-of-state residency does not preclude [the] service of an executor appointed by Will. Rather, Ala. Code [1975,] § 43—2—22[,] only imposes an in-state residency requirement upon administrators of intestate estates.’
“... Also on May 16 Colley resigned as coexecutor of the estate, stating that he did not have time to fulfill his duties as coexecutor and noting that ‘[he] ha[d] been informed by Chip Cleveland, son of [Cleveland], that [Chip] is willing to assume the role of [c]o-[e]xecutor.’
That same day, Chip moved the circuit court to substitute him in Colley’s place as coexecutor or, in the alternative, to appoint him as a coexecutor of the estate. The circuit court granted that motion and appointed Chip coexecutor on May 19, 2014.
“Adams objected to the substitution of Chip as coexecutor, arguing:
“ ‘Neither the [w]ill nor Alabama law provides any basis for the substitution of an unnamed co-executor in the place of a co-executor who resigns his appointment. Rather, as a matter of law, the sole remaining co-executor is vested with full authority to act on behalf of the estate. A court may only appoint a substitute personal representative when all of the designated co-executors are unable to serve.’
“... The circuit court ‘noted’ Adams’s objection but took no further action with regard to Chip’s appointment.
“On May 23, 2014, Adams moved the circuit court to compel Chip and Minor ‘to produce all materials within their possession concerning the assets and liabilities of the [e]state’ ...; to remove Chip as coexecutor; and to impose sanctions against Chip and Minor. With regard to the latter, Adams argued that Chip and Minor had ‘obtained] the appointment [of Chip as coexecutor] through misrepresentations of law and fact.’ ...
“On May 26, 2014, Chip and Minor supplemented their motion to disqualify *783 Adams, adding an argument that Adams had not timely administered the estate. A hearing was held on May 27, and on May 28 Adams submitted a response to the supplemental motion to disqualify him as coexecutor. On May 29, 2014, Chip and Minor moved the circuit court to compel Adams to produce certain documents related to the administration of the estate[, including ‘all documents and records’ of C & M Baling Systems, Inc. (‘C & M’), a North Carolina business jointly owned by Adams and Cleveland, and ‘any documents concerning assets wherein’ Adams and Cleveland had a shared interest]. That same day Adams moved the circuit court to require Chip to post bond as a coexecutor. The parties filed responses to those respective motions. On June 5, 2014, Adams supplemented his motion to require Chip to post a bond. It appears that there has been no ruling on those motions.
“On June 6, 2014, Adams petitioned this Court for mandamus relief from the circuit court’s May 9 order prohibiting Adams from hiring attorneys or other professionals to assist with the administration of the estate and from the May 19 order appointing Chip as coexecutor of the estate. Adams also asks this Court to instruct the circuit court to ‘direct [Chip and Minor] to produce all materials within their possession that would reflect upon the assets and liabilities of the [e]state, [including such items as check registers and statements of account]’ ..., and ‘to enter sanctions against [Chip and Minor] for the amount of attorneys’ fees and costs determined to have been the result of the ... improper attempts to usurp control over the [e]state from Adams and/or Adams’ administration of the [e]state.’ Adams also moved this Court for an emergency stay of the order appointing Chip as a coexecutor of [the] estate.
“On June 13, 2014, Chip moved for sanctions against Adams, arguing that Adams had presented ‘willful and gross falsehoods set forth in documents before [the circuit court],’ including, among others, that Chip and Minor had pressured Colley to resign as coexecutor. On June 20, 2014, this Court issued a stay of the order appointing Chip coexecutor and of ‘all proceedings in the case generally ... pending further order of this Court’ and ordered answer and briefs to be filed as to Adams’s petition for mandamus relief.”
Adams I, 168 So.3d at 41-43.
In Adams I, we first considered Adams’s claim that he had a clear legal right to have Chip removed as coexecutor. Citing applicable statutory authorities identified by Adams and the lack of ambiguity in Cleveland’s will, this Court agreed. 168 So.3d at 44-45, 46. However, noting that Adams filed the petition in Adams I before the trial court’s actual refusal to remove Chip as coexecutor, we nonetheless declined to grant the requested mandamus relief “at [that] time.” 168 So.3d at 46. We similarly denied Adams’s related requests on the ground that the trial court had not actually refused to withdraw the order prohibiting Adams from obtaining the assistance of attorneys and accountants or his demand for access to estate-related documentation in Chip and Minor’s possession. 168 So.3d at 47.
Following the release of this Court’s decision in Adams I on November 26, 2014, proceedings resumed in the trial court. Specifically, Adams immediately filed a motion requesting that the trial court rule on the motions made the subject of the petition for mandamus relief at issue in Adams I. Chip and Minor responded with their own request for a ruling on all pending motions, as well as renewed requests both to sanction Adams and to disqualify him from serving as executor.
*784 On January 30, 2015, Adams filed a motion seeking the trial judge’s recusal on the ground of apparent bias and/or partiality in favor of Chip, whom the motion identified as “a local attorney who routinely practices before [the trial] [c]ourt.” In support of his request, Adams cited the trial court’s alleged refusal to dispose of any pleadings submitted by Adams “while ... granting] multiple filings by Chip ... almost simultaneously with their submission.” More particularly, Adams noted the trial court’s continued refusal to remove Chip as coexecutor despite alleged indications in Adams I that it might be appropriate to do so. See 168 So.3d at 46, 47 (terming the “alleged difference in treatment” as “troubling” and stating, in connection with a concurrent lift of the stay then in effect below, that we “encourage[d] the circuit court to address the pending motions expeditiously”). Adams further noted that the protracted disputes resulting from the coexecutor situation not only had hampered the probate process but also had caused the estate to incur substantial—and purportedly - unnecessary—legal fees—problems Adams anticipated would continue should the trial judge, Sibley G. Reynolds, remain sitting in the case. Attached as an exhibit to Adams’s motion was, among other submissions, a listing of the claims pending against the estate, which totaled in excess of $2 million.
Thereafter, in keeping with this Court’s observations in Adams I, the trial court, in February 2015, ordered Chip’s removal as coexecutor. The trial court also subsequently entered an “Order Setting Eviden-tiary Hearing” for April 8, 2015, specifically to consider “all pending motions and for the taking of testimony on all motions.” In response, among other related filings by the parties, Adams filed a motion specifically requesting that the hearing be transcribed, either by the trial court’s reporter or by an alternate reporter. In addition, Adams filed a renewed request to require Chip and Minor to produce all estate property and records that, according to Adams, remained in their possession. Adams also requested that he be allowed to obtain from Cleveland’s accountant Cleveland’s tax returns from 2007 until the date of Cleveland’s death, which items he had formally requested but had not received allegedly because of the interference and objection of Chip and Minor. In further preparation for the scheduled hearing, Adams also filed a motion requesting rulings on seven specific pleadings—-with filing dates from May 2014 to April 2015—and a renewed motion seeking a protective order regarding Chip and Minor’s pending request for the records of C & M Baling Systems, Inc. (“C & M”).
On April 11, 2015, Chad W. Bryan, one of Adams’s counsel of record, executed an affidavit aimed at recording certain events that had transpired during the pendency of the estate proceedings, including, among other things, hearings conducted on May 27, 2014; January 8, 2015; and April 8, 2015. Specifically, Bryan’s testimony suggested that Judge Reynolds both had conducted proceedings in locations other than the courtroom and had declined specific requests for a court reporter, thus avoiding the formal transcription of the estate proceedings; had questioned why Adams, who did not live in Alabama, wanted to serve as executor and had allegedly made comments suggesting a predisposition on the matter, including that Chip and Minor should be allowed control of the estate in light of their past extension of financial assistance to Cleveland; had- randomly scheduled hearings at which he proceeded to address matters not identified as being set for consideration, thus providing Adams with insufficient time to respond; and had made allegedly threatening comments to Adams’s counsel both in relation to the production of the C & M documentation sought by Chip and Minor and in *785 response to their repeated requests that the hearings be transcribed.
Debra Deames Spain, Bryan’s cocounsel, executed a similar affidavit detailing her independent recollection of the April 8, 2015, hearing. Specifically, Spain testified that during the hearing Judge Reynolds: declined to recognize Adams’s request that the official court reporter transcribe the proceedings and proceeded with argument without allowing Adams to secure an alternate court reporter; accused Bryan and Adams of having violated a prior order requiring the production of the C & M documentation despite no such order having yet been issued, then proceeded, in an allegedly threatening manner, to so order from the bench; and issued similarly threatening comments in response to Adams’s request for a formal evidentiary hearing on the recusal issue.
On April 12, 2015, Adams filed the instant petition in case no. 1140732, again seeking mandamus relief. This Court subsequently ordered answers and briefs.
As reflected in the record in case no. 1141293, discussed below, while the mandamus petition remained pending in this Court, the trial court, on June 19, 2015, conducted a hearing; thereafter, the trial court entered, on June 25, 2015, an order making, among others, the following dispositions:
“1. Motion for Sibley Reynolds to re-cuse. Argument heard and the same is denied.
“2. Motion for attorneys fees called, but parties having witnesses prepared but wanting to take up other motions instead with the time allowed, the same was passed and witnesses released.
“3. Motion for the Production of Estate Property. Argued. Granted in part and denied in part. There is no estate property or asset in the possession of [Chip and Minor]. None to be delivered. Opportunity to inspect being offered and no agreement being reached.
“4. Motion for Sanctions as against [Chip and Minor] argued and denied.
“5. Request to deny motion to prohibit retention of CPA and Attorney. Motion to Prohibit was granted May 9, 2014, but the Executor has ignored the Order.
“6. Renewed Motion to deny retention of CPA and Attorney. Moot as argued.
“7. Petition for Damages for [Chip and Minor for] breach of fiduciary duty, argued and denied.
[[Image here]]
“9. Motion for a Protective Order as filed by C & M.... Court finding in hearing that [Adams] or C & M ... delivered just the day before the hearing the requested financial documents for one of the assets of the estate. Protective Order on dissemination of financial’s of C & M.... ”
The order further explained:
“The requested] evidentiary hearing being held this date, June 19, 2015, as the same was not able to be heard based on the failure to produce the C & M Baling documents to [Chip and Minor], Upon representation by counsel for [Adams], these documents now being produced the day before the hearing.
“[Adams] requesting the Motion for Recusal to be argued first and the request being granted. Upon hearing the argument, the Motion for Recusal is denied as noted above.
“Inspection issue to be handled through the counsel for [Chip and Minor] within 30 days of this date. Personal items of the deceased to be reviewed] but not delivered to the executor. Copies to be made at executor[’s] expense. The request by [Adams] to inspect the records of [certified public accountant] Wyn Mi *786 nor being heard. [Adams] having the opportunity to inspect the records of Wyn Minor and failing to follow up on the inspection. [Adams] to have 30 days to arrange for that inspection.”
On August 3, 2015, Chip and Minor requested that the trial court enter a preliminary injunction preventing Adams from selling the estate’s 25% ownership interest in River Plantation, LLC (“RPL”), an entity formed by Cleveland and third parties as a holding company for approximately 600 acres of farm/hunting land.[2] Essentially, despite the apparent insolvency of the estate, Chip and Minor expressed, in thefr motion seeking injunctive relief, a belief that they are entitled to inherit Cleveland’s interest in RPL or, at the very least, to a “right of first refusal” to purchase that interest.
Apparently three hours before the bidding deadline for the estate’s interest in RPL, the trial court granted the requested injunction, halting the sale, and set the matter for further hearing.[3] Thereafter, over Adams’s objection and following the scheduled preliminary-injunction hearing, the trial court enjoined the sale of the estate’s interest in RPL “pending the determination of the Estate’s solvency.” As to the injunction itself, the trial court’s order provided only the following:
“This Court does Order as follows: All further activities concerning the proposed sale of the [e]state’s interest in [RPL] are enjoined, pending the determination of the [e]state’s solvency. Injunction is entered.”[4]
The trial court similarly rejected Adams’s request that, in the event the sale was enjoined, Chip and Minor be required to post adequate security. In case no. 1141293, Adams appeals from the preliminary injunction. See Rule 4(a)(1)(A), Ala. R.App. P.[5]

Case No. 11W7S2

Adams petitions this Court for a writ of mandamus directing the trial court (1) to *787 direct Chip and Minor to produce the requested items of estate property and documentation regarding assets and liabilities of the estate; (2) to vacate its May 9, 2014, order prohibiting Adams from hiring attorneys and accountants to assist with the administration of the estate; (3) to vacate its order, issued from the bench during the April 2015 hearing, which required Adams to produce documents pertaining to C & M; (4) to sanction Chip and Minor by requiring them to reimburse the estate for the attorney fees and costs resulting from their allegedly unfounded attempts to have Chip appointed as coexecutor and to disqualify Adams; and (5) to direct the trial judge to recuse himself from presiding further over the underlying proceedings.[6] For the reasons stated below, we deny the petition.

Standard of Review

As we explained in Adams I, we review a petition for writ of mandamus subject to the following standard:
“‘It is well settled that a writ of mandamus will issue where the petitioner demonstrates “ ‘(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.’ ” ’
“Toler v. Murray, 886 So.2d 76, 78 (Ala. 2004) (quoting Ex parte Fontaine Trailer Co., 854 So.2d 71, 76 (Ala.2003), quoting in turn Ex parte State ex rel. CM., 828 So.2d 291, 293 (Ala.2002)).”
168 So.3d at 43.

Discussion

In their responses to Adams’s petition, Chip and Minor maintain that the trial court’s June 25, 2015, order, as set out above, addressed and resolved the issues before this Court in Adams’s most recent request for mandamus relief. They argue that the order clearly addressed Adams’s assertion of a clear legal right to obtain any estate-related items in Chip and Minor’s possession by granting Adams access; that, as the trial court’s order pointed out, any request by Chip and Minor to deny Adams’s hiring of an accountant was moot, because Adams had proceeded with such hiring; and that the dispute regarding production of the C & M records was moot in light of Adams’s production of the records one day before the June 19 hearing. They further argue that Adams’s' request for sanctions against Chip and Minor was without merit and that Adams’s request for the recusal of Judge Reynolds “[carries] a very high burden.”
Adams concedes that the portion of his petition pertaining to the production of the C & M records (item (3) above) was mooted by the trial court’s entry of a protective order; therefore, we do not consider that issue. Case v. Alabama State Bar, 939 So.2d 881, 884 (Ala.2006) (“An action ... cannot be maintained on appeal if the questions raised in it have become moot by subsequent acts or events.”). See also Ex parte Novartis Pharm. Corp., 991 So.2d 1263 (Ala.2008) (holding that, like an appeal, a petition for a writ of mandamus may be dismissed if, while the petition is pending, an event occurs that renders it impossible for the appellate court to grant the requested relief). Adams nonetheless maintains that he possesses a clear legal right to estate property and records in the possession of Chip and Minor and to hire professionals to assist with the administration of the estate (items (1) and (2) above). *788 However, as quoted above, the trial court’s order appears to have granted Adams sufficient access to the estate property at issue and noted that any request to permit the hiring of professionals was moot in light of the fact that Adams had already done so. Because the trial court appears to have, during the pendency of this petition, already awarded to some degree or recognized as moot the relief Adams requested as to these two issues, they are also denied as moot. Ex parte Novartis, supra.
Adams further argues that he has a clear, legal right to have sanctions imposed against Chip and Minor in the form of reimbursement of fees and costs (item (4) above) because, he argues, if he is entitled to the requested reimbursement, it must occur before the final distribution of the estate’s assets. We are not convinced, however, that Adams and/or the affected creditors do not have an adequate remedy with regard to this issue by means of direct appeal, and Adams does not cite applicable authority in support of his assertion that mandamus review of this particular claim is permissible. See State v. Martin, 69 So.3d 94, 96-97 (Ala.2011) (“Mandamus is an extraordinary remedy, and ‘[t]his Court will not issue the writ of mandamus where the petitioner has “ ‘full and adequate relief ” by appeal.’ Consequently, in seeking review of the trial court’s ... order by a petition for a writ of mandamus, it would appear that the [petitioner] ‘has an affirmative burden to prove’ that the ‘trial court clearly exceeded its discretion’ and that the [petitioner] ‘does not have an adequate remedy by ordinary appeal.’ ”), and Ex parte Heaton, 738 So.2d 877, 878 (Ala.1999) (“Mandamus relief is not appropriate when it ‘requests this Court to do something that can be done on appeal.’ ” (quoting Ex parte State Farm Gen. Ins. Co., 549 So.2d 484, 485 (Ala.1989))). See also Rule 21(a)(D), Ala. R.App. P.
The remaining issue is whether the trial judge is required to recuse himself from presiding further over the underlying proceedings. See Ex parte Crawford, 686 So.2d 196, 198 (Ala.1996) (noting this Court’s belief “that to allow the recusal issue to be raised either on appeal, after having been properly preserved at trial, or in a petition for a writ of mandamus, will best serve the interests of justice.”). Adams maintains that all litigants are entitled to have their “proceedings administered by a judge who is free from even the appearance of partiality.” Pet. at 37. See Crowell v. May, 676 So.2d 941, 944 (Ala.Civ.App.1996) (“[A]ctual bias is not necessary for a judge to recuse—only a reasonable appearance of bias or impropriety.”), and Canon 3.C(1), Alabama Canons of Judicial Ethics (“A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned .... ”).
It is well established that “[t]he burden of proof is on the party seeking recusal.” Ex parte Cotton, 638 So.2d 870, 872 (Ala.1994), abrogated on other grounds, Ex parte Crawford, 686 So.2d 196 (Ala.1996). Further,
“[t]he standard for recusal is an objective one: whether a reasonable person knowing everything that the judge knows would have a ‘reasonable basis for questioning the judge’s impartiality.’ [Ex parte] Cotton, 638 So.2d [870,] 872 [ (Ala.1994) ]. The focus of our inquiry, therefore, is not whether a particular judge is or is not biased toward the petitioner; the focus is instead on whether a reasonable person would perceive potential bias or a lack of impartiality on the part of the judge in question.”
Ex parte Bryant, 682 So.2d 39, 41 (Ala. 1996).
*789 Here, Adams bases his argument that Judge Reynolds should recuse himself on Judge Reynolds’s alleged failure to voluntarily and timely rule on Adams’s motions below as opposed to Judge Reynolds’s allegedly prompt—and largely favorable—disposition of all motions filed by Chip and Minor. See Pet. at pp. 38-40. In support of his contentions, as well as citing the filing and disposition dates of the parties’ respective proceedings in the trial court, Adams identifies rulings by Judge Reynolds in other cases in which Chip was involved, in which it was subsequently determined, on appeal, that Judge Reynolds had exceeded his discretion, i.e., Adams alleges there is a history of Judge Reynolds’s preferential treatment of Chip, not just in the present case, but in all matters in which Chip appears before Judge Reynolds and in which Chip has a financial interest.[7] According to Adams, there is, therefore, at the very least, “an appearance of partiality” tainting the proceedings. Pet. at 44.
“ ‘The necessity for recusal is evaluated by the “totality of the facts” and circumstances in each case. [Ex parte City of] Dothan Pers. Bd., 831 So.2d [1] at 2 [ (Ala.2002) ]. The test is whether “ ‘facts are shown which make it reasonable for members of the public or a party, or counsel opposed to question the impartiality of the judge.”” Ex parte George, 962 So.2d 789, 791 (Ala. 2006) (quoting In re Sheffield, 465 So.2d 350, 355-56 (Ala.1984), quoting in turn Acromag-Viking v. Blalock, 420 So.2d 60, 61 (Ala.1982) (emphasis added)). ‘Recusal is not required where there is not substantial evidence to support an accusation of bias.’ Ford v. Ford, 412 So.2d 789, 791 (Ala.Civ.App.1982) (emphasis added).
“ ‘ “[T]he law will not suppose a possibility of bias or favor in a judge who is already sworn to administer impartial justice and whose authority greatly depends upon that presumption and idea.” ’ Ex parte Balogun, 516 So.2d 606, 609 (Ala.1987) (quoting Fulton v. Longshore, 156 Ala. 611, 613, 46 So. 989, 990 (1908)).”
Ex parte Bank of America, N.A., 39 So.3d 113, 119-20 (Ala.2009).
*790 In large part, Adams’s allegations of treatment reflecting a bias on the part of Judge Reynolds in favor of Chip stem from the trial court’s alleged failure to rule on Adams’s motions below. As reflected in the trial court’s June 2015 order, however, those motions have now largely been disposed—and not all adversely to Adams. Adams relies on Liteky v. United States, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), which, with regard to the federal recusal statute,[8] calls for an objective review of allegations of bias and emphasizes that “what matters is not the reality of bias or prejudice but its appearance.” 510 U.S. at 548. However, Liteky also stands for the proposition that “judicial rulings alone almost never constitute a valid basis for a bias or partiality motion” because the mere fact of the ruling—or lack thereof—when viewed alone and objectively, “cannot possibly show reliance upon an extrajudicial source” and, instead, represents “proper grounds for appeal, not for recusal.” 510 U.S. at 555, 556. See also Ex parte Monsanto Co., 862 So.2d 595, 606 (Ala.2003) (same); Kitchens v. Maye, 623 So.2d 1082, 1086 (Ala.1993) (“‘The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and must result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.’ ” (quoting United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966))).
The mere failure to rule on pending matters is easily distinguishable from the severe actions found in the cases on which Adams’s petition relies in support of its call for Judge Reynolds’s recusal. See Matter of Sheffield, 465 So.2d 350, 355 (Ala.1984)(requiring recusal where the trial judge had engaged in public comment on the merits of the case and where the trial judge presided over a contempt proceeding of which he and his court were the objects); State v. Moore, 988 So.2d 597, 601 (Ala.Crim.App.2007) (holding that a trial judge should have recused himself from presiding over the retrial of a defendant whose conviction had been reversed on appeal in light of publicity detailing palpable animosity between the trial judge and the prosecutor); Ex parte Atchley, 951 So.2d 764, 765 (Ala.Crim.App.2006) (recusal was warranted where the petitioner’s unrefuted affidavit testimony established that the trial judge had previously served as petitioner’s defense counsel and that, during that prior representation, the petitioner and the trial judge became embroiled in a heated confrontation as a result of alleged pressure placed on the petitioner to plead guilty to an offense he denied committing); and Crowell v. May, 676 So.2d 941, 944 (Ala.Civ.App.1996) (affirming trial court’s grant of new trial and trial judge’s recusal from further involvement in the case following disclosure of the relationship between trial judge’s family and the family of one of the parties to the litigation). Further, excepting the mere fact that Chip practices in the circuit where Judge Reynolds sits, Adams cites no evidence of an “extrajudicial source” as a foundation for his allegations of bias. See Whisenhant v. State, 555 So.2d 219, 223 (Ala.Crim.App.1988) (“‘While a true personal bias will disqualify a jury, a judicial bias, if one exists, will not disqualify a trial judge from hearing a case.’ ” (quoting Whisenhant v. State, 482 So.2d 1225, 1237 (Ala.Crim.App.1982))).
There is evidence in the materials before us suggesting the trial court’s possible exasperation with or antagonism toward Adams and/or his counsel. On this subject, Liteky aptly explains:
*791 “[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in Berger v. United States, 255 U.S. 22 (1921), a World War I espionage case against German-American defendants: ‘One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans’ because their ‘hearts are reeking with disloyalty.’ Id., at 28 (internal quotation marks omitted). Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are ivithin the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge’s ordinary efforts at courtroom administration—even a stem and short-tempered judge’s ordinary efforts at courtroom administration—remain immune.”
510 U.S. at 555-56 (some emphasis omitted; some emphasis added). See also Monsanto, 862 So.2d at 625; Ex parte Large, 501 So.2d 1208, 1210 (Ala.1986); and Hartman v. Board of Trs. of Univ. of Alabama, 436 So.2d 837, 841 (Ala.1983).
Although comments such as those reported to have been expressed by Judge Reynolds are neither to be encouraged nor commended, “ ‘[t]he vital point is that ... the judge should not himself give vent to personal spleen or respond to a personal grievance.’ ” Moore, 988 So.2d at 603 (quoting Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954)). Contrary to Moore, there is nothing here to suggest that Judge Reynolds’s comments resulted from a personal grievance against either Adams or his counsel. See Monsanto, supra; Large, supra; and Hartman, supra. See also Ex parte Duncan, 638 So.2d 1332, 1334 (Ala.1994) (“The trial judge’s statements arose out of a judicial proceeding, not from an extrajudicial source; and although the trial judge’s expressed opinions may have been better left unsaid, in our opinion the remarks he made do not show bias, hostility, or prejudice against Duncan arising from a ‘personal,’ i.e., extrajudicial, source.”). Further, Judge Reynolds’s alleged comments to Adams’s counsel do not rise to the level of those in Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921). Thus, although the alleged incidents of unprofessional behavior attributed to Judge Reynolds remain “troubling,” Judge Reynolds does appear to have heeded, to some discernible extent, our prior admonitions in Adams I; thus, Adams has failed to identify circumstances demonstrating a clear legal right to a writ by this Court directing Judge Reynolds to recuse himself from the underlying case. We, therefore, deny the petition.

Case No. 114.1293

In case no. 1141293, Adams appeals from the trial court’s preliminary injunction prohibiting the sale of the es *792 tate’s shares in RPL. More specifically, Adams maintains that the trial court’s decision was both procedurally and factually erroneous in that the injunction was entered in direct violation of both the powers expressly afforded Adams in Cleveland’s will and his statutory duties as executor and in that it further failed to satisfy Rule 65, Ala. R. Civ. P.

Discussion

As to the sufficiency of an injunctive order in light of Rule 65(d), Ala. R. Civ. P., we have explained:
“When reviewing a preliminary injunction, this Court must consider both whether the evidence in the record supports the issuance of the preliminary injunction and whether the form of the preliminary-injunction order itself complies with the requirements of Rule 65(d)(2), Ala. R. Civ. P. We review the evidence to determine whether the following elements set forth in Perley ex rel. Tapscan, Inc. v. Tapscan, Inc., 646 So.2d 585, 587 (Ala.1994), were established:
“ ‘In order for a trial court to grant a preliminary injunction, the plaintiff must show all of the following: (1) that without the injunction the plaintiff would suffer immediate and irreparable injury; (2) that the plaintiff has no adequate remedy at law; (3) that the plaintiff has at least a reasonable chance of success on the ultimate merits of his case; and (4) that the hardship imposed on the defendant by the injunction would not unreasonably outweigh the benefit accruing to the plaintiff.’
“(Citing Martin v. First Fed. Sav. & Loan Ass’n of Andalusia, 559 So.2d 1075 (Ala.1990); Board of Dental Exam’rs of Alabama v. Franks, 507 So.2d 517 (Ala.Civ.App.1986), writ quashed, 507 So.2d 521 (Ala.1987)). Rule 65(d)(2) meanwhile sets forth the elements that every preliminary-injunction order must contain:
“ ‘Every order granting an injunction shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.’
“... In this case, it is clear on its face that the circuit court’s order does not comply with Rule 65(d)(2). Accordingly, we need not consider whether the evidence ultimately supports the issuance of the preliminary injunction because the order is due to be reversed regardless of whether the evidence supports the issuance of the injunction. See Marathon Constr. & Demolition, LLC v. King Metal Recycling & Processing Corp., 129 So.3d 272, 276 n. 3 (Ala.2013) (‘The defendants make other complaints about the trial court’s November 28, 2012, order.... Because the trial court’s failure to comply with the requirements of Rule 65 is dispositive, we need not reach the other arguments.’).
“Pursuant to Rule 65, it is mandatory that a preliminary-injunction order give reasons for the issuance of the injunction, that it be specific in its terms, and that it describe in reasonable detail the act or acts sought to be restrained.’ Monte Sano Research Corp. [v. Kratos Defense & Sec. Solutions, Inc.], 99 So.3d [855,] 863 [ (Ala.2012) ]. The February 27, 2014, order in this case is sufficiently specific in its terms and describes in reasonable detail the acts sought to be restrained; however, it contains no ex *793 planation of the reasons- for its issuance. Instead, the order opens by stating that the court has ‘considered [Colley’s] motion for injunctive relief [and] finds said motion well taken.’ Then the order immediately proceeds to detail the specific acts that it requires or prohibits. What is missing from the order is any discussion of the reasons Colley’s motion for injunctive relief was ‘well taken.’ ”
Stephens v. Colley, 160 So.3d 278, 282-83 (Ala.2014). See also, e.g., Butler v. Roome, 907 So.2d 432, 434 (Ala.2005) (“This Court has repeatedly held that the language of Rule 65(d)(2) is mandatory and requires that an order issuing a preliminary injunction state reasons for issuing the injunction and that it be specific in its terms.”); and Marathon Constr. & Demolition, LLC v. King Metal Recycling & Processing Corp., 129 So.3d 272, 278 (Ala. 2013) (“ ‘Alabama law ... clearly provides that “[i]t is mandatory that security be given under Rule 65(c), unless the trial court makes a specific finding based upon competent evidence that one or more of the exceptions, stating them, do exist.” ’ ” (quoting Spinks v. Automation Pers. Servs., Inc., 49 So.3d 186, 191 (Ala.2010))).
Like the order at issue in Stephens, the trial court’s order in the present case is sufficiently specific as to the enjoined conduct. Also like the order in Stephens, notably absent from the trial court’s order here, however, is the requisite explanation for the issuance of the injunction. See Stephens, supra; Rule 65(d)(2).
In their brief on appeal, Chip and Minor acknowledge the mandatory nature of the requirements found in Rule 65. They maintain, however, that “elaborate detail” is not necessary to meet those requirements and, contrary to Adams’s contentions, argue that the trial court’s inclusion of language explaining that the injunction was issued “pending a determination of the Estate’s solvency” amounted to sufficient explanation for the issuance of the injunction. (Chip and Minor’s brief, at p. 14.) We cannot agree.
Chip and Minor’s argument fails to acknowledge the language of Rule 65(d)(2) as well as the numerous decisions of this Court reaffirming that the requirements of Rule 65(d)(2) are mandatory. Although the language quoted above from the trial court’s order does explain what issue the trial court intends to resolve during the term of the injunction, it wholly fails to state the specific grounds on which the injunction itself issued. That omission, alone, requires reversal of the trial court’s order, regardless of the potential underlying merit, which, as a result of the facial deficiency of the order, this Court need not reach. See Marathon Constr., supra. In consideration of the foregoing, the trial court’s preliminary injunction halting the sale of the estate’s interest in RPL is reversed and the case is remanded for further proceedings consistent with this opinion.
1140732—PETITION DENIED.
MOORE, C.J., and STUART, BOLIN, PARKER, and MAIN, JJ., concur.
BRYAN, J., concurs specially.
MURDOCK, J,, concurs in the result.
WISE, J., recuses herself.
1141293—REVERSED AND REMANDED.
MOORE, C.J., and STUART, BOLIN, PARKER, MAIN, and BRYAN, JJ., concur.
MURDOCK, J., concurs in the result.
WISE, J., recuses herself.

. According to Adams, after Cleveland served as his legal counsel, he and Cleveland became close personal friends and later established several good business ventures.

. The remaining members of RPL had, in February 2015, submitted an initial offer to purchase Cleveland’s 25% interest in RPL from the estate. Upon receipt of that initial offer, Adams, noting that, pursuant to RPL’s operating agreement, the membership interest of a deceased member may be transferred to a lineal descendant of that member without triggering the buy-out provisions also found in the operating agreement, provided notice to Chip and Minor—in case they might be willing to pay more for the estate’s interest than the remaining RPL members. Adams later set a formal deadline by which all competing bids were due. Instead of responding with a bid as apparently anticipated, Chip and Minor sought, two days before the bidding deadline, injunctive relief to prevent the sale of Cleveland’s interest.

. As Adams notes, this initial grant of relief appears to have been more in the manner of a temporary restraining order. The original order of the trial court provided, in full:
“This matter having come before the Court by way of [Chip and Minor’s] Motion for Preliminary Injunction, and upon the Court considering the same, it is hereby Ordered, Adjudged, and Decreed as follows:
"1. Said motion is well taken and due to be granted.
"2. Executor Adams shall take no action to continue the gathering of bids and ultimately attempting to sell any interest of the Estate in that entity known as [RPL] until further order of this Court.
"3. This matter shall be set for a hearing on the 18th day of August, 2015, at 9:00 a.m. at the Autauga County Courthouse."

. A transcript of the preliminary-injunction hearing is not included with the record on appeal in case no. 1141293.

. The mandamus petition was briefed and then submitted to this Court on July 10, 2015. The notice of appeal in case no. 1141293 was received by this Court on August 27, 2015, and the mandamus petition was held pending the submission of the appeal on briefs, which occurred on January 12, 2016.

. Notably, Adams’s petition was filed before the entry by the trial court of the June 2015 order discussed in more detail above.

. See Ex parte Found. Bank, 146 So.3d 1, 8 (Ala.2013) (holding, in a case where Chip served as counsel for the respondent in a dispute before Judge Reynolds over attempts to redeem, in the probate court, property sold pursuant to a tax sale, that because the probate court has exclusive jurisdiction over the statutory redemption process, the circuit court lacked jurisdiction to stay redemption in the probate court); Cartwright v. Maitland, 30 So.3d 405, 408 (Ala.2009) (reversing, in a case where Chip served as cocounsel for parties suing their realtor, the trial court’s refusal to compel, on the realtor’s motion, arbitration of the subject claims); City of Prattville v. S & M Concrete, LLC, 151 So.3d 295, 302 (Ala.Civ.App.2013) (reversing, in a case where Chip served as counsel for local Prattville businessman, the decision of the City of Prattville to deny a rezoning request as being neither arbitrary nor capricious and further concluding that the circuit court lacked jurisdiction because the business owner’s appeal from the zoning board’s decision was untimely); and Stanfield v. Stanfield, 2 So.3d 873, 877 (Ala.Civ.App.2008) (reversing, in a case where Chip represented one of the parties in a divorce proceeding, the trial court’s refusal to set aside a default judgment in favor of Chip’s client). We see nothing probative in these apparently random and isolated instances of the reversal on appeal of Judge Reynolds's judgments in cases where a lawyer, who apparently practices primarily within the Autau-ga Circuit, happened to serve as counsel, and Adams identifies no portion of the cited opinions indicating a determination by the appellate court that the identified error was the result of bias. Similarly, in spite of citing the foregoing cases as further evidence of Judge Reynolds’s apparent long-standing bias in favor of Chip, the petition correctly concedes that these “isolated reversals are [not per se] indicia of bias.” Pet. at 43 n. 11.

. See 28 U.S.C. § 455.